FILED
United States Court of Appeals
Tenth Circuit

March 8, 2016

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARIO HUMBERTO LLANTADA,

Defendant - Appellant.

No. 15-2082

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. 2:14-CR-00832-KG-1)**

---

Margaret Katze (Dennis J. Candelaria, Assistant Federal Public Defender, Las Cruces, New Mexico, on the briefs) Office of the Federal Public Defender, Albuquerque, New Mexico, for Appellant.

David N. Williams, Assistant United States Attorney (Damon P. Martinez, United States Attorney, with him on the brief) Office of the United States Attorney, Albuquerque, New Mexico, for Appellee.

---

Before **TYMKOVICH**, Chief Judge, **LUCERO**, and **HOLMES**, Circuit Judges.

---

**TYMKOVICH**, Chief Judge.

---

Most federal criminal sentences require prisoners to comply with various limitations on their conduct and behavior as a condition of release from prison. Typical conditions, for example, prohibit parolees from abusing alcohol or drugs, or associating with felons. We recently held that the district court does not err when it imposes conditions of release of this sort. *United States v. Muñoz*, ___ F.3d ___, 2016 WL 502863, at \*3 (10th Cir. 2016). Our decision in *Muñoz* resolves most of the challenges to the special conditions imposed in this case. But Llantada also challenges on vagueness grounds several of the special conditions imposed on him and not considered in *Muñoz*.

We AFFIRM the district court's sentence. The conditions of supervised release imposed here are sufficiently clear to inform a parolee of what conduct will result in a return to prison.

## I. Analysis

Llantada pleaded guilty to charges arising from a drug conspiracy in 2014. The district court sentenced him to 168 months' imprisonment, followed by terms of supervised release ranging from one to five years, and imposed a number of special conditions that will apply when he is released from prison. He challenges those conditions on vagueness grounds. He also challenges the district court's refusal to award him a sentence reduction because of his relatively minor role in the conspiracy.

## A. *Conditions of Supervised Release*

Llantada first challenges the twelve conditions of supervised release imposed by the district court. These conditions were nearly all standard conditions of supervised release typically imposed at sentencing. 18 U.S.C. § 3563. The language of the conditions was drawn, often nearly verbatim, from the federal sentencing statute. *See id.* Some of Llantada's arguments are identical to those presented in *Muñoz* and are controlled by that decision. To the extent his arguments differ from those presented in *Muñoz*, we address them below.

### 1. *Arguments Addressed in* **Muñoz**

Several of Llantada's arguments were addressed in *Muñoz*. First, *Muñoz* found that the district court does not abuse its discretion when it imposes standard conditions of release without making particularized findings. "[W]e held in *United States v. Martinez-Torres* that supportive findings are unnecessary when the conditions are standard . . . . There we explained that the standard conditions include those recommended under the guidelines." *Munoz*, ___ F.3d at ___, 2016 WL 502863, at *10 (citing *United States v. Martinez-Torres*, 795 F.3d 1233, 1237 (10th Cir. 2015)).

*Muñoz* also addressed several of the specific conditions that Llantada claims are vague or substantively unreasonable. These include the following:

(1) "The defendant shall answer truthfully all inquiries by the probation officer and follow the instruction of the probation officer";

(2) "The defendant shall support his or her dependents and meet other family responsibilities";

(3) "The defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons";

(4) "The defendant shall notify the probation officer at least ten days prior to any change in residence or employment";

(5) conditions related to alcohol use; and

(6) conditions related to searches conducted by the probation officer.

According to *Muñoz*, we apply a common sense, non-technical reading to these conditions of release. *See id.* at *3 ("In our view, the district court did not err, for we use common sense to guide our interpretation of supervised release conditions."). Neither a parolee nor his parole officer would have trouble understanding and applying these conditions in a real world setting.

In addition to those conditions, *Muñoz* also partially addressed three more of the conditions that Llantada challenges:

(1) "The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered";

-4-

(2) "The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer"; and

(3) "The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer."

*Muñoz* did not address vagueness challenges to these three conditions, but found them adequate in all other respects. In sum, *Muñoz* held that most of the conditions challenged by Llantada are not erroneous or unlawful under circuit precedent.

### 2. Vagueness and Other Arguments Not Addressed in **Muñoz**

Several of Llantada's arguments were not directly addressed by *Muñoz*, and we consider them here.[1]

> ### a. "The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer."

Llantada argues that this condition is vague because several of its terms, such as "law enforcement officer" or "questioned," are undefined. But as *Muñoz* discussed, "we use common sense to guide our interpretation of supervised

---

[1] The defendant in *Muñoz* did not raise several of his challenges in the district court. So the panel reviewed those arguments only for plain error. Because Llantada presented all of his arguments to the district court, we review them for abuse of discretion. Thus, *Muñoz* did not completely address all of Llantada's arguments under the abuse of discretion and clear error standards of review we must apply here.

release conditions." *Id.* at *3 (citing *United States v. Mike*, 632 F.3d 686, 701 (10th Cir. 2011), *cert. denied*, 135 S. Ct. 2891 (2015)). Penal statutes, including conditions of supervised release, must be written so that "ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Corrow*, 119 F.3d 796, 802 (10th Cir. 1997) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)); *see also Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ("[W]e insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly."). Under a commonsense reading, the district court did not abuse its discretion in imposing this condition. "Law enforcement officer" and "questioned" are common terms understood by the general population, and we presume that in Llantada's future, probation officers and judges will heed our directive to apply the conditions of supervised release in a commonsense manner, rather than a technical one. *See Mike*, 632 F.3d at 701. So, for example, if a parking meter attendant asks Llantada for the time, this would not qualify as "being questioned" by a "law enforcement officer" under a commonsense understanding of the condition.

The condition is not vague and the district court did not abuse its discretion in making it a term of Llantada's sentence.

> ### b. "The defendant shall not leave the judicial district without the permission of the court or probation officer."

Llantada next argues that this restriction violates his right to travel and is unnecessary. In addition, he argues the district court should have made particularized findings before imposing this condition. The condition, however, is recommended by the sentencing statute. *See* 18 U.S.C. § 3563(b)(13) ("The court may provide that . . . the defendant . . . reside in a specified place or area, or refrain from residing in a specified place or area[.]").

As *Muñoz* found, conditions recommended by the sentencing statute or Guidelines need not be accompanied by particularized findings. ___ F.3d at ___, 2016 WL 502863, at *10. And we reject his argument that the condition is an unreasonable or unnecessary limitation on his right to travel. Llantada points to no federal case with such a holding, and the government provides ample reasons for limiting a person on supervised release to a single judicial district. For example, probation officers have an easier time contacting and speaking with an offender if he is limited to a single area. In addition, such a restriction acts as a deterrent to criminal conduct, which comports with the policy goals of federal sentencing law. *See* 18 U.S.C. § 3553(a)(2)(B). Finally, the restriction can be lifted by a parole officer upon request by the parolee.

The condition is not unreasonable and the district court did not abuse its discretion.

***c. "The defendant shall report to the probation officer in a
manner and frequency directed by the court or probation
officer."***

This condition also appears in the federal sentencing statute. *See* 18 U.S.C.
§ 3563(b)(15). Llantada contends that this condition is vague because "manner"
and "frequency" are not defined. This could result, he claims, in a probation
officer requiring multiple daily visits. But Llantada unsurprisingly points to no
federal case finding this condition vague or inadequate as a matter of law. Again,
under a commonsense understanding of the condition, the probation officer could
require visits only as they were necessary. Some offenders may require more
frequent visitation than others. The condition allows probation officers, tasked
with maintaining the public's safety, the leeway necessary to better accomplish
this goal.

We reject Llantada's challenge to this standard condition.

***d. Condition relating to the defendant's participation in a
substance abuse treatment program.***

Llantada claims this condition is invalid because he may not be able to pay
for such a treatment program. A similar argument was presented and rejected in
*Muñoz*. There the defendant alleged a child support payment requirement was
inadequate because he might not be able to pay child support. We stated that
"[m]any conditions might be reasonable but impossible to perform in given
circumstances," but that this fact did not "prevent entry of an order" requiring

such tasks be completed upon release.  ___ F.3d at ___, 2016 WL 502863, at *6.

A probation officer might reasonably excuse such a requirement if its completion

is not possible.  The district court did not abuse its discretion in requiring that

Llantada complete a substance abuse program.

> ### e.  *"The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered."*

*Muñoz* rejected a challenge to this condition, but did not address a

vagueness challenge under the abuse of discretion standard.  ___ F.3d at ___,

2016 WL 502863, at *9–10.  As we recognized, this condition is taken, almost

verbatim, from the U.S. Sentencing Guidelines Manual.  *Id.*; *see also* 18 U.S.C.

§ 3563.  We explicitly rejected Muñoz's challenge that the condition created strict

liability.  *Muñoz*, ___ F.3d at ___, 2016 WL 502863, at *9–10 ("The most

reasonable interpretation of the condition is that it prohibits Mr. Muñoz from

going to places only if he knows that drugs are used or sold there.").  So all that

remains is Llantada's vagueness challenge: that "frequent" and "place" are

undefined and thus inadequate as a matter of law.  We, again, reject this type of

literal reading of the condition under our *Mike* standard.  The probation officer,

and any judges tasked with deciding whether Llantada violated the condition,

must interpret the condition in a reasonable, commonsense manner.  We have

little doubt that the condition allows for reasonable interpretation and

enforcement.

There was no abuse of discretion.

> **f. "The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer."**

Finally, Llantada contends that this condition is vague and also infringes on his constitutionally protected associational rights. He points to a case in the Seventh Circuit, which recently vacated this condition on vagueness grounds, finding the offender could have no way of knowing if someone he was associating with was a felon or not. *United States v. Thompson*, 777 F.3d 368, 376–77 (7th Cir. 2015) ("How would the defendant know whether someone he was associating with had ever been convicted of a felony? . . . [T]he condition appears to impose strict liability."). We reject this challenge because under our commonsense reading of the condition, strict liability is not imposed. *Cf. Muñoz*, ___ F.3d at ___, 2016 WL 502863, at *9–10. The most reasonable interpretation of the condition is that it prohibits associating only with those people Llantada knows to be felons.

In *Muñoz*, we rejected the defendant's associational rights challenge because he failed to allege any family members were felons. *See* ___ F.3d at ___, 2016 WL 502863, at *7 ("But Mr. Muñoz has not alleged that he has any family members with felony convictions. In the absence of such an allegation, the district court acted within its discretion in imposing the condition." (footnote

-10-

omitted)).  Here, Llantada's brother was also convicted for his involvement in the drug conspiracy, and Llantada specifically alleges as much.  But, as the government points out, Llantada's probation officer may allow contact with Llantada's brother if he deems it appropriate; the condition is not a blanket ban.  If such contact is prohibited, Llantada may then bring a challenge asserting his constitutional rights.  *Cf. id.* at *5.

In addition, even were we to scrutinize the condition more closely—as we have done with conditions restricting access to one's own children—we find the restriction is justified under the record.  *See United States v. Bear*, 769 F.3d 1221, 1229 (10th Cir. 2014) ("[S]pecial conditions that interfere with the right of familial association can do so only in compelling circumstances and it is imperative that any such restriction be especially fine-tuned to achieve the statutory purposes of sentencing.") (citations and internal quotation marks omitted).  In Llantada's case, there is evidence that association with his brother might lead him to commit further crimes.  Namely, that he induced his brother to join the drug conspiracy in the first place.  This "achieve[s] the statutory purposes of sentencing."  *Id.*

### B. *Mitigating Role Adjustment*

Llantada also challenges the district court's failure to grant his request for a mitigating role adjustment. We review for clear error. *See United States v. Chavez*, 229 F.3d 946, 956 (10th Cir. 2000) ("We review for clear error the district court's factual findings supporting the application of a particular sentencing guidelines provision and its legal conclusions de novo.").

He argues that because he was only a middleman in the drug conspiracy, the district court clearly erred in failing to provide for a mitigating role adjustment. The mitigating role adjustment provides "a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." USSG § 3B1.2 cmt. application note 3(A). But we have emphasized that "a defendant is not necessarily entitled to a sentence reduction under § 3B1.2 solely because he can show that he was a middleman." *United States v. Onheiber*, 173 F.3d 1254, 1258 (10th Cir. 1999). Here, the court found that Llantada's conduct warranted an *aggravating* role adjustment, finding that he had the authority to negotiate a price for the drugs.

In sum, Llantada fails to show the district court committed clear error here in denying him the mitigating role adjustment.

## II.  Conclusion

We AFFIRM the district court's sentence.

No. 15-2082, *United States v. Llantada*

**HOLMES**, Circuit Judge, concurring.

I fully join Part I.B of the majority's opinion. However, I concur only in the majority's result (i.e., judgment to affirm) regarding Part I.A. In summary fashion, I pause to briefly note the two most salient reasons for the latter determination.

First, contrary to the majority's apparent view, I do not believe that Mr. Llantada preserved his particularized-findings challenges to either the standard or special conditions of his supervised release. Though Mr. Llantada did allude to a particularized-finding obligation in his district court briefing, Mr. Llantada failed to lodge any objection to the district court's alleged failure to give particularized findings when the court orally announced his sentence. As such, Mr. Llantada forfeited his procedural objections to the court's failure to make particularized findings. *See, e.g.*, *United States v. Mendoza*, 543 F.3d 1186, 1191 (10th Cir. 2008) ("A party must specifically object to the district court's procedure in order to preserve that issue for review."); *United States v. Romero*, 491 F.3d 1173, 1177 (10th Cir. 2007) (clarifying that "the requirement of contemporaneous objection to procedural errors is consistent with our precedent"); *cf. United States v. Rodebaugh*, 798 F.3d 1281, 1302 (10th Cir. 2015) ("When the defendant objects to a special condition of supervised release *at the time it is announced*, this Court reviews for abuse of discretion." (emphasis added) (quoting *United States v.*

*Dougan*, 684 F.3d 1030, 1034 (10th Cir. 2012))).  And, on appeal, Mr. Llantada has not argued for plain-error review; rather, he maintains that all of his supervised-release challenges are preserved.  Consequently, in my view, his forfeited procedural challenges to the district court's alleged failure to make particularized findings are at "the end of the road"—that is, they are effectively waived and should not be addressed on the merits.  *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011); *see, e.g.*, *United States v. Lamirand*, 669 F.3d 1091, 1100 n.7 (10th Cir. 2012) ("Mr. Lamirand has not asked us to review his late-blooming argument for plain error. Accordingly, we decline to do so and will not definitively opine on the merits of this argument.").[1]

Second, I do agree with the general gist of the majority's opinion insofar as it concludes that our precedent's commonsense and non-technical approach to interpreting supervised-release conditions[2] essentially disposes of Mr. Llantada's substantive vagueness challenges because, so construed, the conditions are not

---

[1]    In any event, as the majority notes, Mr. Llantada's particularized-findings objections are wholly without merit relative to, at the very least, the district court's standard conditions of supervised release; the district court was not obliged to make such findings as to standard conditions.  *See United States v. Martinez-Torres*, 795 F.3d 1233, 1237 (10th Cir. 2015).

[2]    *See, e.g., United States v. Muñoz*, --- F.3d ----, 2016 WL 502863, at *3 (10th Cir. Feb. 9, 2016) ("With the gloss of common sense, the condition was not too vague."); *United States v. Mike*, 632 F.3d 686, 701 (10th Cir. 2011) (concluding that the Ninth Circuit's construction of supervised-release conditions was "overly technical" and deciding to "opt instead for a more commonsense" approach).

unreasonable and the district court therefore did not abuse its discretion in imposing them. But I also would hold that, to the extent that Mr. Llantada's substantive challenges are predicated on hypothetical improper applications of his supervised-release conditions—which, under a commonsense, non-technical construction are facially valid and reasonable—those challenges are not ripe and, consequently, we must not consider them. *See United States v. LeCompte*, 800 F.3d 1209, 1214–15 (10th Cir. 2015) (noting that "courts have dismissed challenges to conditions . . . based on a defendant's fear of hypothetical applications of the condition"); *see also United States v. Rhodes*, 552 F.3d 624, 629 (7th Cir. 2009) (rejecting as unripe a substantive supervised-release challenge of a defendant serving a lengthy prison sentence where he "may only be affected by the condition after a string of contingencies"); *United States v. Schoenborn*, 4 F.3d 1424, 1434 (7th Cir. 1993) ("The condition upon which Schoenborn's claim depends—revocation of his supervised release—has yet to occur (and may never occur). The issue is not ripe for review . . . .").

In his briefing and during oral argument, Mr. Llantada has repeatedly argued that, even assuming that the challenged supervised-release conditions could be read as imposing reasonable, legally-sound restrictions, because they are vague, they also are susceptible to being unlawfully applied by the U.S. Probation Office and the district court in oppressive and unreasonable ways. Therefore, he contends that it is imperative that we clarify the express terms of those conditions

to preclude such adverse possibilities.  In this regard, Mr. Llantada has recounted a proverbial parade of horribles—that is, examples of ostensibly oppressive or unreasonable applications of his challenged supervised-release conditions that he might possibly experience when he is released from prison.

For example, with reference to the condition that he "shall support his or her dependents and meet other family responsibilities," Mr. Llantada muses regarding the "other family responsibilities" language, "Can a probation officer file a petition to revoke a supervisee's term of release if Mr. Llantada fails to wash the dishes?"  Aplt. Opening Br. at 24–25.  Well, putting aside the fact that the commonsense, nontechnical reading of the provision would not contemplate this, *cf. United States v. Muñoz*, --- F.3d ----, 2016 WL 502863, at *6 (10th Cir. Feb. 9, 2016) (noting that an essentially identical condition is "naturally understood to require only financial support"), if such a petition were ever filed against Mr. Llantada, he surely would have a vehicle *at that time* to secure an answer to the question—that is, an as-applied challenge.  *See LeCompte*, 800 F.3d at 1215 (noting that "allowing as-applied challenges to the condition accounts for unanticipated applications").  Until then, any challenge by Mr. Llantada based on such a hypothetical dish-washing violation is unripe and must not be considered.

In sum, in my view, Mr. Llantada's procedural challenges to the district court's alleged failure to make particularized findings regarding his supervised-release conditions were forfeited in the district court and should be deemed

effectively waived on appeal. Furthermore, his substantive attacks on supervised-release conditions fail when those conditions are read—as our precedent demands—in a commonsense, non-technical way. The district court therefore did not abuse its discretion in imposing those conditions. Mr. Llantada should act on the presumption that the U.S. Probation Office and the district court will adopt a commonsense, non-technical reading of the supervised-release conditions when applying them to him upon his release from prison. And, if they do not, and instead apply the conditions in unreasonable or arbitrary ways, then Mr. Llantada may mount as-applied challenges at that time to this ostensibly unlawful action. Mr. Llantada's substantive challenges are unripe, insofar as they are predicated on hypothetical instances of illegal applications of his supervised-release conditions. For these two salient reasons, I concur only in the judgment as to Part I.A.