**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 14, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MONTY ENGLEHART,

    Defendant - Appellant.

No. 21-8007

_____

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 2:12-CR-00026-ABJ-1)**
_____

Eric K. Klein, Johnson & Klein, PLLC, Boulder, Colorado, for Defendant - Appellant.

Timothy J. Forwood, Assistant United States Attorney (L. Robert Murray, Acting United States Attorney with him on the brief), Cheyenne, Wyoming, for Plaintiff - Appellee.
_____

Before **HOLMES**, **KELLY**, and **MATHESON**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.
_____

Monty Englehart pled guilty to failure to register as a sex offender under the

Sex Offender Registration and Notification Act ("SORNA") and was sentenced to

time served and five years of supervised release. The conditions of his supervised

release prohibited him from viewing sexually explicit materials.

Mr. Englehart violated the conditions of his supervised release on three occasions by viewing legal, adult pornography. After a hearing, the district court amended the sexual material restriction and added additional conditions to Mr. Englehart's supervised release, including (1) psychosexual evaluation and treatment and (2) mental health treatment.

Mr. Englehart argues the district court failed to make particularized findings of compelling circumstances to justify the revised Sexual Material Prohibition and failed to give even a generalized statement of reasons to justify the Mental Health Condition. We agree, vacate those conditions, and remand for further proceedings. But we affirm the Psychosexual Evaluation and Treatment Condition because the district court provided an adequate generalized statement of reasons and did not improperly delegate sentencing authority to Mr. Englehart's probation officer.

## I.  BACKGROUND

### A. *Illinois State Court History*

In 1998, Mr. Englehart was convicted of Aggravated Criminal Sexual Abuse in Illinois state court (the "1998 Conviction"). The victim was H.W., a 15-year-old girl. As a result of this conviction, Mr. Englehart was required to register as a sex offender.

In 2009, after two children under the age of 13 accused him of sexually abusing them between 2007 and 2008, Mr. Englehart was again charged in Illinois state court for sex crimes and possession of child pornography (the "2009 Charges"). He fled the jurisdiction before he could be arrested on those charges.

While Mr. Englehart was a fugitive, he was featured on the television show "America's Most Wanted." C.M., a viewer of the program, recognized Mr. Englehart and called in, stating that Mr. Englehart had abused her in 1999 or 2000, when she was 11 years old. In a 2012 interview, she told an Illinois State Police investigator that Mr. Englehart had touched her inappropriately when he was her mother's live-in boyfriend.[1]

In 2011, U.S. Marshals arrested Mr. Englehart in Wyoming, where he was living under an assumed name. Investigators found child pornography on a laptop in his home when he was arrested. He was extradited to Illinois to stand trial on the 2009 Charges.

In Illinois court, Mr. Englehart was found unfit to stand trial on the 2009 Charges after a doctor who examined him reported that he was exhibiting behavioral symptoms of mental illness. ROA, Vol. 2 at 96. During the fitness proceedings, Mr. Englehart attempted to escape from custody and was charged with Felon Probationer Escape. He was found guilty of that charge after a jury trial in 2015.

In July 2016, Mr. Englehart finally went to trial on the 2009 Charges.[2] The jury could not reach a verdict, and the court declared a mistrial. The 2009 Charges

---

[1] Although Mr. Englehart was charged for Aggravated Criminal Sexual Abuse based on this report, the charge was dismissed in 2013. The record does not specify the grounds for dismissal.

[2] The record does not disclose what happened between the fitness determination and trial. Presumably, the Illinois court eventually found Mr.

were later dismissed in exchange for Mr. Englehart's agreement to plead guilty to a separate state charge of failure to register as a sex offender. He was released from Illinois prison and transferred to federal custody in the District of Wyoming in 2018.

## B. *Wyoming Federal District Court History*

### 1. **Indictment, Plea, and Sentencing**

While Mr. Englehart's case was proceeding in Illinois state court, a federal grand jury in the District of Wyoming indicted him in 2012 for failing to register as a sex offender under SORNA, possession of child pornography, and Social Security fraud. After he was transferred back to Wyoming, Mr. Englehart entered a plea agreement in which he agreed to plead guilty to the SORNA charge and the Government agreed to dismiss the child pornography and Social Security fraud charges.

In January 2019, the district court sentenced him to time served and five years of supervised release. It imposed special conditions of supervised release, which, as relevant here:

> (1) Prohibited Mr. Englehart from possessing, sending, or receiving "any pornographic, sexually oriented, or sexually stimulating visual, auditory, telephonic or electronic signs, signals or sounds from any source." ROA, Vol. 1 at 36.
>
> (2) Required him to participate in and successfully complete sex offender treatment. *Id.*

---

Englehart fit to stand trial. C.M. testified at Mr. Englehart's trial on the 2009 Charges.

(3)  Prohibited him from associating with children under the age of 18.  *Id.*

## 2. **Supervised Release Violations**

In October 2020, the Government petitioned the court to modify Mr. Englehart's supervised release conditions (the "Modification Petition").  Mr. Englehart's probation officer, Tracy Morton, alleged that Mr. Englehart had advised him of four violations of the conditions:

(1)  "On April 9, 2019, the defendant advised a female brought a hand-held device to his residence and on the device was a pornographic video that was shown to him."  ROA, Vol. 1 at 44.

(2)  "On December 4, 2019, the defendant advised that a male neighbor came across the hallway to his residence with a hand-held device and showed the defendant a pornographic video."  *Id.* at 45.

(3)  "On April 15, 2020, the defendant advised he was hanging out with a female friend, Kimmy, who requested the defendant walk her 4 year old daughter to the local park.  The defendant advised he began to walk the minor to the park and remembered he must be in the presence of an adult.  He advised he immediately called the minor's mother and she joined them."  *Id.*  The probation officer confirmed that Mr. Englehart had disclosed his background to the child's mother.  *Id.*

(4)  "On September 23, 2020, the defendant advised he has been working through childhood trauma issues with his mental health counselor.  He advised he disclosed something very traumatizing to her during a recent counseling session.  He advised he borrowed an unauthorized cell phone from a friend in a motel where he resides and watched pornography for ten days in a row in response to disclosing his trauma.  He spoke to his mental health counselor about his response to disclosing the traumatic information and advised she

agreed he handled himself appropriately given the situation." *Id.* at 46.

The Government requested that Mr. Englehart's supervised release conditions be modified to add conditions requiring Mr. Englehart to:

> (1) Participate in a psychosexual evaluation and sex offender treatment;
>
> (2) Participate in mental health treatment; and
>
> (3) Sign release forms authorizing his treatment providers to disclose confidential information to his probation officer.[3]

The Government also requested that the sexual material prohibition previously imposed be replaced with a revised condition containing more specific language.

### 3. Modification Hearing

In January 2021, the district court held a hearing on the proposed modification of Mr. Englehart's supervised release conditions (the "Modification Hearing"). At the hearing, the Government presented testimony from (a) Officer Tracy Morton; (b) FBI Special Agent Tory Smith; and (c) Dr. Charles Denison, a licensed forensic psychologist. We summarize the relevant testimony below.

a. *Probation Officer Morton*

The Government first called Officer Morton. She testified that Mr. Englehart was initially difficult to work with but was making progress under her supervision.

---

[3] In addition to the conditions listed above, the Government also requested that Mr. Englehart be required to obtain full-time employment and find appropriate housing. Mr. Englehart does not challenge those conditions on appeal.

She then described the supervised release violations charged in the petition for modification, including that Mr. Englehart volunteered the information about the violations to her.

Officer Morton testified that early in his supervised release, Mr. Englehart underwent a SOTIPS[4] sex offender assessment "to assess his risk level for treatment." *Id.* at 19. She said Mr. Englehart "assessed as a low risk on the higher end," and "the counselor felt he was emotionally unstable at that time and suggested that he look into mental health treatment." *Id.* at 19-20. Once Mr. Englehart was "emotionally stable," the counselor "would reevaluate if he should complete another assessment." *Id.* at 20. Officer Morton opined that an additional psychosexual evaluation would be helpful because, although Mr. Englehart completed a "very basic sex offender assessment," the SOTIPS, "the probation office really doesn't have a . . . detailed history[] for Mr. Englehart, so we can't really determine what treatment he has had in the past or what he may need now." *Id.* at 23.

Officer Morton further testified that, although Mr. Englehart was voluntarily participating in mental health treatment, "it's just important that he continues to participate in that, and I do believe he—he intends to." *Id.* She described the proposed Mental Health Condition as a "safeguard." *Id.* She also wanted Mr. Englehart to authorize the release of information for any treatment program.

---

[4] SOTIPS stands for Sex Offender Treatment Intervention and Progress Scale. *See* SOTIPS: Sex Offender Treatment Intervention and Progress Scale, Nat'l Inst. of Corrs., https://perma.cc/8RE7-56VC.

Although Mr. Englehart had allowed her to participate in phone calls with his counselor and to attend in-person sessions, the Probation Office "like[s] to be able to have an open dialogue with the counselor just in case there's something that needs to be discussed without the individual in the room." *Id.* at 24. She later clarified that the Probation Office only wanted a release to "[c]onfirm attendance" at therapy, "maybe confirm progress," and to know Mr. Englehart's diagnosis. *Id.* at 44.

b. *Special Agent Smith*

The government next called Agent Smith. He testified about Mr. Englehart's apprehension in Wyoming in 2011, the child pornography that was found on Mr. Englehart's computer, and the details he learned during interviews with H.W. and C.M. in 2018. H.W., the victim in Mr. Englehart's 1998 Conviction, disclosed additional details of the sexual assault. ROA, Vol. 2 at 91. C.M. disclosed additional details of Mr. Englehart's assault and that, as a child, she once saw a large amount of pornography in the trunk of Mr. Englehart's car.

c. *Dr. Denison*

Dr. Charles Denison testified regarding the Government's proposed Sexual Material Prohibition. He had not examined Mr. Englehart, but he had reviewed the presentence report for Mr. Englehart's SORNA conviction and reports from Agent Smith and Officer Morton.

Dr. Denison testified that risk factors for recidivism by convicted sex offenders generally include substance abuse, the quantity and nature of previous sexual deviance, general mental and behavioral stability or instability, and the type of

8

offense.  He said use of adult pornography could also be a risk factor depending on the presence of other risk factors.  He also testified that persons who are "prolific" users of adult pornography often become habituated to it, which leads them to seek out other forms of pornography.  *Id.* at 80.

Dr. Denison concluded that "several . . . risk factors" were present here, but he was "certainly not making any judgments about [Mr. Englehart's] risk level because I haven't conducted a psychosexual evaluation of Mr. Englehart."  *Id.* at 81.  "[S]peaking generally," he concluded that "even the use of adult pornography would be contraindicated or—or problematic" based on the presence of other risk factors including his criminal and psychological history, his known use of child pornography, and his recent "very high use" of pornography.  *Id.* at 81-83.

### 4.  **District Court's Findings**

After the Government's three witnesses testified, both sides presented argument and Mr. Englehart addressed the court.  The district court then made the following findings:

- Dr. Denison was a "significant authority" and had "provided some information to help the Court's understanding."  ROA, Vol. 3 at 139.

- Mr. Englehart had, by his own admission, viewed pornography in violation of his supervised release on three separate occasions, with the final incident involving "10 days straight" of viewing pornography.  *Id.* at 139, 144.

- Mr. Englehart has a history of alcoholism and mental illness.  *Id.* at 142.

- Mr. Englehart was convicted of sexual abuse of a minor in 1998.  *Id.*

- Mr. Englehart has been accused of sexually abusing another minor in a similar fashion.[5] *Id.* at 142.

- Mr. Englehart's computer contained child pornography when he was arrested in 2011. *Id.* at 144.

- People at the motel where Mr. Englehart lives are "viewing and passing around pornographic materials," and "we know from Dr. Denison's testimony, looking from the back forward, the danger of that for persons such as Mr. Englehart who do have that history in their background." *Id.* at 148.

"As a consequence" of these findings, the district court reimposed the Sexual Material Prohibition with the Government's proposed modifications. *Id.*

The court then addressed whether Mr. Englehart should be required to submit to a psychosexual evaluation. It noted that nearly two years had passed since Mr. Englehart's last evaluation, and during that time Mr. Englehart had committed three violations of supervised release involving pornography. One of those violations, the court noted, involved "10 days straight of viewing pornography not under any kind of supervision whatsoever." *Id.* at 149. The court was not "impress[ed]" that Mr. Englehart's therapist "may or may not have said that it was okay and part of treatment in this case." *Id.* The court "f[ou]nd in that kind of situation with that progression that that is something that deserves to be looked into . . . to restore trust, if nothing else, and to give us some direction going forward with regard to this defendant." *Id.* at 150.

---

[5] The district court did not mention the allegations of the two children leading to the 2009 Charges.

Finally, the Government asked the court "to clarify about the mental health treatment program as well as the release forms." *Id.* at 151. The court responded: "I don't think there's any requirement—I think he needs to continue with mental health, and there will be a requirement that he participate in mental health and that the information that needs to be furnished is . . . the diagnosis, is he compliant, is he attending." *Id.*

5. **Modified Conditions**

The district court entered an order imposing the following modified or additional conditions of supervised release:

> Sexual Material Prohibition
>
> The Defendant shall not possess, in any form, materials depicting child pornography, child erotica, or nude or sexual depictions of any child; or any materials described at 18 U.S.C. § 2256(8).
>
> The Defendant shall not access, possess, send, or receive any visual depictions of sexually explicit conduct as defined in 18 U.S.C. § 2256(2)(B), if the materials taken as a whole, are primarily designed to arouse sexual desire.[6]
>
> Mental Health Condition
>
> The defendant shall participate in and successfully complete a mental health treatment program approved by the U.S. Probation Officer, and abide by the rules, requirements, and conditions of the treatment program. The defendant shall not

---

[6] Mr. Englehart notes that § 2256(2)(B)'s definition of "sexually explicit conduct" was taken from a child pornography statute. He suggests "it is unclear if the terms of the condition as stated in the district court's order actually prohibit legal, adult pornography." Aplt. Br. at 10-11 n.5. Apart from his failure to adequately develop this argument, it was clear at the Modification Hearing that the condition would apply to adult pornography. The district court cross-referenced to a definition in the statute and did not incorporate the statutory scheme.

11

discontinue treatment without the permission of the U.S. Probation Officer.[7]

Psychosexual Evaluation & Treatment Condition

The defendant shall participate in and successfully complete a psychosexual evaluation with either Dr. Amanda Turlington or Dr. William Heineke. The cost of the evaluation will be paid for by the probation office. The defendant shall sign a release of authorization allowing the probation office to communicate with the provider and obtain the results of the evaluation. He shall participate in and successfully complete any recommended treatment in a program approved by the United States Probation Officer, and abide by the rules, requirements, and conditions of the treatment program. The defendant shall not discontinue treatment without the permission of the Probation Officer.

ROA, Vol. 1 at 51-52.

## II. DISCUSSION

### A. *Standard of Review*

When a defendant objects to a special condition of supervised release at the time it is announced, we review the imposition of the special condition for abuse of discretion. *United States v. Flaugher*, 805 F.3d 1249, 1251 (10th Cir. 2015). "A

---

[7] The district court also imposed the following Release Form Condition:
> The defendant shall sign limited release forms authorizing the release of confidential information for any treatment program he is participating in to allow for communication between the treatment provider and the probation officer. The information to be released shall include any diagnosis, defendant compliance and progression, and attendance.

This condition applies to "any treatment program"—which would include both mental health and psychosexual. At the Modification Hearing, however, the court considered it only for the Mental Health Condition. *See* App., Vol. 3 at 24, 43-44, 151.

district court abuses its discretion only where it (1) commits legal error, (2) relies on clearly erroneous factual findings, or (3) where no rational basis exists in the evidence to support its ruling." *United States v. A.S.*, 939 F.3d 1063, 1070 (10th Cir. 2019) (quotations omitted).

B. ***Legal Background on Special Conditions of Supervised Release***

We review special conditions of supervised release for both substantive and procedural reasonableness. *See United States v. Pacheco-Donelson*, 893 F.3d 757, 759-761 (10th Cir. 2018).

1. **Substantive Requirements**

Conditions of supervised release must "(1) be 'reasonably related' to the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, or the defendant's educational, vocational, medical, or other correctional needs; (2) 'involve no greater deprivation of liberty than is reasonably necessary' for the purposes of deterring criminal activity, protecting the public, and promoting the defendant's rehabilitation; and (3) be consistent with any pertinent policy statements issued by the Sentencing Commission." *United States v. Martinez-Torres*, 795 F.3d 1233, 1236 (10th Cir. 2015) (quoting 18 U.S.C. § 3583(d)) (alteration omitted).

2. **Procedural Requirements**

"This court's precedents create something of a hierarchy as to the extent of justification required when a district court imposes conditions of supervised release."

13

*United States v. Koch*, 978 F.3d 719, 724-25 (10th Cir. 2020). Mandatory conditions—those required by statute—do not require an individualized assessment. *Id.* at 725. "When, however, neither the Sentencing Commission nor Congress has required or recommended a condition, we expect the sentencing court to provide a reasoned basis for applying the condition to the specific defendant before the court." *Martinez-Torres*, 795 F.3d at 1237. "That is, before a district court can impose upon a defendant a special condition of supervised release, the district court must analyze and generally explain how, with regard to the specific defendant being sentenced, the special condition furthers the three statutory requirements set out in 18 U.S.C. § 3583(d)." *Koch*, 978 F.3d at 725. Although we generally are "not hypertechnical in requiring the court to explain why it imposed a special condition of release—a statement of generalized reasons suffices—the explanation must be sufficient for this court to conduct a proper review." *Id.* (quotations omitted).

The next step in the hierarchy is "when a court imposes a special condition that invades a fundamental right or liberty interest." *United States v. Burns*, 775 F.3d 1221, 1223 (10th Cir. 2014). The court must justify such a condition with "compelling circumstances." *Id.* "Particularly where the condition of release implicates constitutional interests, such as the right to possess sexually oriented materials involving adults, more detail may be required if the reasons for the restriction are not matters of common knowledge." *Koch*, 978 F.3d at 725 (quotations omitted).

14

Our case law thus "mandates that the district court engage in an on-the-record analysis of the propriety of all special conditions of supervised release and a particularly meaningful and rigorous analysis when the special condition implicates a fundamental right or interest." *Id.* at 726.

## C. *Analysis*

As we discuss below, the Sexual Material Prohibition and the Mental Health Condition cannot withstand procedural challenge. The Psychosexual Evaluation and Treatment Condition is procedurally reasonable, and the authority it grants to the probation officer is substantively reasonable.

### 1. Sexual Material Prohibition

Although the district court may have had sufficient evidence to make particularized findings of compelling circumstances to justify the Sexual Material Prohibition, it failed to do so. The district court generally discussed Mr. Englehart's personal and criminal history, but it failed to connect this history to the Sexual Material Prohibition or address the statutory criteria for imposing special conditions of supervised release. We must therefore vacate the condition and remand for the district court to attempt to remedy this deficiency under our precedent.[8]

---

[8] Mr. Englehart also argues that the Sexual Materials Prohibition must be vacated because the district court relied on clearly erroneous findings of fact. Aplt. Br. at 13-16. Because we vacate the condition on the ground that the district court's explanation was insufficient to allow for meaningful appellate review, we do not reach this argument.

a. *Legal background on sexual material prohibitions*

In a recent appeal from the Wyoming federal district court, this court said that "[t]he Supreme Court has made clear that the First Amendment protects the right of individuals to possess sexually explicit materials involving adults, let alone non-explicit sexually oriented materials." *Koch*, 978 F.3d at 724 (citing *United States v. Williams*, 553 U.S. 285, 288 (2008).[9] "This right, like other rights enshrined in the First Amendment is fundamental." *Id.* "[I]t is now patently clear in the Tenth Circuit that before a district court can impose a special condition implicating a fundamental right, including a condition like the Sexual Material Prohibition, the district court must set forth, on the record, defendant-specific findings that show a compelling interest." *Id.* at 726.

i. *Martinez-Torres*

In *United States v. Martinez-Torres*, we vacated a condition that prohibited the defendant from "viewing or possessing any material depicting or describing sexually explicit conduct or child pornography as defined in 18 U.S.C. § 2256." 795 F.3d at 1236. We agreed with the defendant that the condition "involve[d] a greater deprivation of liberty than [wa]s necessary to deter criminal activity, protect the public, and promote his rehabilitation." *Id.* at 1237. "The district court's sole expressed reason for the condition was that Defendant had been convicted of a sex

---

[9] Mr. Engelhart does not challenge the portion of the Sexual Material Prohibition that prohibits child pornography. Aplt. Br. at 11.

offense . . . . But that is not enough." *Id.* Rather, we explained, the district court "needed to make an individualized assessment of whether it was appropriate for Defendant." *Id.* Although it was "quite relevant that Defendant was a convicted sex offender," the district court still "needed to explain why the restriction of legal sexually explicit material was supported by the statutory factors in this case." *Id.* at 1238.

### ii. *Koch*

In *United States v. Koch*, we also vacated a prohibition on sexual materials because the district court did not adequately justify the condition with compelling circumstances. 978 F.3d at 725, 730. The district court "merely noted the following: (1) the extent of Koch's criminal history (i.e., sexual contact with thirteen-year-old and fifteen-year-old girls and possession of child pornography); (2) a personal doubt offenders like Koch were amenable to rehabilitation; and (3) a desire to address Koch's 'cognitive thinking errors.'" *Id.* at 725. The court did not "analyze or explain how restricting [the defendant's] access to sexually oriented (but non-pornographic) materials, specifically including such materials only involving adults, would aid in [his] rehabilitation or protect the public." *Id.* For example, the court did not "find that accessing sexual material involving adults impaired [the defendant's] rehabilitation because it rendered him unable to undertake tasks associated with daily life," or "acted as some kind of sexualizing gateway leading to the consumption of child pornography." *Id.*

17

b. *Application*

　　i.　The district court's inadequate findings

The district court's explanation for its decision was deficient for the same reasons discussed in our recent decision in *Koch*. Here, as in *Koch*, the district court merely "reviewed [Mr. Englehart's] personal and criminal history," "repeatedly noted [Mr. Englehart's] prior conviction" of sexual abuse as well as allegations for which he was not convicted, and deemed this history "concerning." *Id.* at 723. Here, as in *Koch*, the district court failed to mention the three statutory requirements set out in 18 U.S.C. § 3583(d), let alone "analyze and generally explain how, with regard to the specific defendant being sentenced, the special condition furthers" those criteria. *Id.* at 725. And here, as in *Koch*, the court failed to connect any of its "findings" to the Sexual Material Prohibition, let alone justify the condition with a showing of "compelling circumstances." *Id.* at 726. Instead, the district court generally summarized Mr. Englehart's past and vaguely referenced the testimony of the Government's witnesses. The court "made no specific findings with regard to the special conditions of supervised release." *United States v. Dunn*, 777 F.3d 1171, 1178 (10th Cir. 2015).

There may be good reasons to impose the Sexual Material Prohibition given Mr. Englehart's history and background. But the district court failed to connect Mr. Englehart's background and the Sexual Materials Prohibition to the statutory factors. "If the district court believed that there was some relationship between the defendant's possession and use of adult pornography and the likelihood that he would

18

engage in sexual misconduct involving young girls, the court should have explained the basis for that conclusion." *United States v. Peraza-Mercado*, 553 F.3d 65, 76 (1st Cir. 2009); *see also Martinez-Torres*, 795 F.3d at 1240.  In other words, the district court "needed to explain *why* the restriction on legal sexually explicit material was supported by the statutory factors in this case." *Martinez-Torres*, 795 F.3d at 1238 (emphasis added).  It failed to do so.  *See Koch*, 978 F.3d at 726 ("Nor did the district court consider any of the other potentially numerous valid reasons for restricting [the defendant's] access to constitutionally protected materials."). "Absent such analyses on the part of the district court, it is simply impossible for [Mr. Englehart] to contest, or for this court to resolve as a substantive matter, whether a prohibition like the Sexual Material Prohibition satisfies the statutory imperatives set out in [§ 3583(d)], let alone the requirement that any such special condition, given that it implicates a fundamental right, serves a compelling governmental interest." *Id.*

Further, "even if the condition served 'some unexplained rehabilitative, deterrent or penological purpose,' the purpose needed 'to be balanced against the serious First Amendment concerns endemic in such a restriction.'" *Martinez-Torres*, 795 F.3d at 1240 (quoting *United States v. Voelker*, 489 F.3d 139, 151 (3d Cir. 2007)).  Here, the district court failed to (1) identify the rehabilitative, deterrent, or penological purpose of the condition; and (2) balance any such purpose against First Amendment concerns.

19

ii. Dr. Denison

The district court's vague reference to Dr. Denison's testimony does not suffice to establish the required nexus. The court said simply that "we know from Dr. Denison's testimony, looking from the back forward, the danger of [pornography] for persons such as Mr. Englehart who do have that history in their background." ROA, Vol. 3 at 148. It did not elaborate on the "danger[s]" that Dr. Denison's testimony established.

In *Koch*, we suggested that one justification for a Sexual Material Prohibition might be a finding that sexual material involving adults "acted as some kind of sexualizing gateway leading to the consumption of child pornography." 978 F.3d at 725. But the district court's analysis of that issue here was inadequate to allow "this court to resolve as a substantive matter, whether a prohibition like the Sexual Material Prohibition . . . serves a compelling governmental interest." *Id.* at 726. Other than its conclusory reference to Dr. Denison's testimony, the court did not analyze or explain how that testimony showed the Sexual Material Prohibition is "reasonably related" to Mr. Englehart's particular "history and characteristics, the need to protect the public from future crimes, and his need for correctional treatment." *United States v. Bear*, 769 F.3d 1221, 1228 (10th Cir. 2014).

Further, Dr. Denison's analysis and conclusions provide limited value because he did not examine Mr. Englehart. *See United States v. Mike*, 632 F.3d 686, 693 (10th Cir. 2011) (relying in part on results of psychological evaluations to support conditions); *United States v. Barela*, 797 F.3d 1186, 1193 (10th Cir. 2015) (same).

20

His testimony regarding "habituation" thus amounts to little more than an abstract possibility. Dr. Denison's general observation that a high percentage of those who commit sexual offenses also consume pornography is not the kind of "individualized assessment" that our cases require. *Martinez-Torres*, 795 F.3d at 1237. As we previously noted in *Martinez-Torres*, "there is certainly expert literature suggesting, at the least, that a more nuanced approach is preferable to painting with a broad brush." *Id.* at 1240 (collecting authorities). Indeed, Dr. Denison "hesitate[d] to make statements about this particular defendant because[, he said,] I don't know him—I'm certainly not making any judgments about his risk level because I haven't conducted a psychosexual evaluation of Mr. Englehart." ROA, Vol. III at 81.

Dr. Denison's testimony may have established that the use of adult pornography could be a "risk factor" for Mr. Englehart. But before determining that the risk was sufficient to justify the Sexual Material Prohibition, the district court needed to consider the presence of other risk factors, as well as any mitigating factors, and balance the risks "against the serious First Amendment concerns endemic in such a restriction." *Martinez-Torres*, 795 F.3d at 1240 (quotations omitted). The district court's conclusory reference to the "danger" of pornography for individuals with Mr. Englehart's "history" was insufficient. ROA, Vol. III at 148.

### iii. Government's counterarguments

The Government fails to demonstrate the district court made the requisite findings. It merely summarizes the testimony that it presented at the modification hearing and argues that, based on this testimony and Mr. Englehart's criminal

history, the district court had ample basis to impose the Sexual Material Prohibition.

Maybe so, but that is not the same as showing that the district court "set forth, on the

record, defendant-specific findings that show a compelling interest." *Koch*, 978 F.3d

at 726. Instead, the Government relies extensively on record evidence and testimony

that the district court never discussed. We express no opinion whether the Sexual

Material Prohibition could have been justified by the evidence available in the

record. To enable meaningful appellate review, the district court must do so. We

remand for the district court to try again.

*    *    *    *

On remand, the district court must (1) make particularized findings that are

specific to Mr. Englehart's history and characteristics, (2) explain how the specific

condition furthers the statutory goals of supervised release, and (3) balance those

goals against the First Amendment concerns raised by the condition. Only

compelling circumstances will overcome those concerns.[10]

---

[10] The Government has conceded that, as a substantive matter, the Sexual Material Prohibition is overbroad to the extent it prohibits Mr. Englehart from accessing "in any form . . . nude . . . depictions of any child." ROA, Vol. 1 at 52. It argues only that "prohibiting the Defendant from viewing *photographic depictions* of nude children is a valid supervision condition and is not overly broad." Aplee. Br. at 35 (emphasis added). But the condition is not limited to photographic depictions. It includes non-photographic depictions of child nudity that could be seen, for example, in many public art museums.

Generally, "where a broad condition of supervised release is ambiguous and could be read as restricting a significant liberty interest, we construe the condition narrowly so as to avoid affecting that significant liberty interest." *Bear*, 769 F.3d at 1230. But we cannot manufacture an ambiguity or rewrite the condition altogether. Here, as in *Koch*, a "narrow reading of the condition" as a restriction on photographic depictions alone "is simply not possible." 978 F.3d at 722-23 n.1. The

2.  **Mental Health Condition**

Mr. Englehart challenges the procedural reasonableness of the Mental Health Condition, arguing that the district court failed to justify it with particularized findings of compelling circumstances.  Under our precedent, the Mental Health Condition does not implicate a fundamental liberty interest.  Although the district court therefore needed to provide only a statement of generalized reasons to justify the condition, it failed to do so.  We vacate the condition.

a.  *Legal standard*

The parties dispute whether the Mental Health Condition implicates a "fundamental liberty" and thus requires the district court to make particularized findings of compelling circumstances.  Mr. Englehart relies on our statement in *United States v. Bear* that "conditions requiring a mental health evaluation and treatment affect a liberty interest and must be supported by particularized findings by the district court."  769 F.3d at 1230.  The Government, relying on *United States v. Jereb*, 882 F.3d 1325 (10th Cir. 2018), counters that the imposition of mental health treatment does not intrude on a "fundamental" liberty interest and thus need only be justified by "generalized reasons."  We agree with the Government.

---

Sexual Material Prohibition unambiguously proscribes all "depictions," photographic or otherwise.  We therefore cannot save the child nudity ban by imposing a limiting construction.

On remand, if the district court reimposes a more limited child nudity ban, it must analyze and explain the reasons why the ban is reasonably related to the relevant statutory factors and no more restrictive than necessary to achieve those purposes.

Although *Bear* referred to "liberty interests" and "particularized findings," it did not conclude that mental health conditions implicate fundamental liberties, and it did not suggest that such conditions need to be justified by "compelling circumstances." *See* 769 F.3d at 1230-31.[11]  Four years after *Bear*, we explained that "[d]istrict courts enjoy broad discretion to order special conditions of supervised release, including mandatory mental health treatment." *Jereb*, 882 F.3d at 1342.  We did not mention any requirement of "particularized findings" or "compelling circumstances."  Rather, we said that a "statement of generalized reasons is enough, provided the district court's explanation is sufficient to allow proper appellate review." *Id.* at 1343.

Thus, to justify the Mental Health Condition, the district court needed only to provide "generalized reasons . . . sufficient to allow proper appellate review." *Id.* We need not be "hypertechnical in requiring the court to explain why it imposed" this condition. *Id.* (quoting *Martinez-Torres*, 795 F.3d at 1238).

b. *Application*

Although the district court was not required to make particularized findings of compelling circumstances before imposing the Mental Health Condition, it failed to

---

[11] By contrast, we acknowledged elsewhere in *Bear* that "a father has a fundamental liberty interest in maintaining his familial relationship with his children." 769 F.3d at 1229 (quotations and alteration omitted).  We also said, "Given the importance of this liberty interest, special conditions that interfere with the right of familial association can do so only in compelling circumstances." *Id.* (quotations omitted).

provide even a statement of generalized reasons.  We therefore vacate the condition and remand for the district court to give an appropriate explanation.

As discussed above, we have not required district courts to find compelling circumstances before imposing mental health treatment conditions.  Further, "we have generally found a defendant's commission of a sex crime enough to require an initial mental health assessment and treatment consistent with that assessment." *Bear*, 769 F.3d at 1230.

But here the district court failed to provide even the "statement of generalized reasons" that we require when a special condition does not implicate a fundamental liberty.  *Martinez-Torres*, 795 F.3d at 1238 (quotations omitted).  The entirety of the district court's discussion was:  "I think he needs to continue with mental health, and there will be a requirement that he participate in mental health and that the information that needs to be furnished is as I discussed, the diagnosis, is he compliant, is he attending."  ROA, Vol. 3 at 151.  Again, we express no view on whether the Mental Health Condition might be appropriate for Mr. Englehart based on the record before the district court.[12]  As an appellate court, we will not make those findings in the first instance.  And the district court failed to make on-the-record findings to support the condition.

---

[12] The Sentencing Guidelines recommend that "a condition requiring that the defendant participate in a mental health program approved by the United States Probation Office" should be imposed "[i]f the court has reason to believe that the defendant is in need of psychological or psychiatric treatment."  U.S.S.G. § 5D1.3(d)(5).

Moreover, the condition imposed by the district court was materially different from the condition the district court and the parties discussed at the Modification Hearing. At the Modification Hearing, the Government agreed to limit the required release of information to "the diagnosis, is he compliant, is he attending." ROA, Vol. 3 at 151. The district court said, "Very well. We can put that limitation right into it." *Id.* But the court's order modifying Mr. Englehart's conditions of supervised release does not contain that limitation. It instead requires Mr. Englehart to sign release forms "authorizing the release of confidential information for any treatment program he is participating in to allow for communication between the treatment provider and the probation officer. The information to be released shall include any diagnosis, defendant compliance and progression, and attendance." ROA, Vol. 1 at 52. By its unambiguous terms, the condition requires Mr. Englehart to sign a release form authorizing his probation officer to access confidential information including, but not limited to, diagnosis, compliance and progression, and attendance. That is not what was contemplated at the Modification Hearing, and the district court made no findings to support such a broad provision.

*     *     *     *

Because the district court failed to supply a statement of generalized reasons justifying the Mental Health Condition, and because the condition imposed does not reflect the court's ruling at the Modification Hearing, we vacate the Mental Health Condition and remand for the district court to make the necessary findings and provide an appropriate explanation for its decision.

26

3. **Psychosexual Evaluation and Treatment Condition**

Mr. Englehart challenges the Psychosexual Evaluation and Treatment

Condition on the procedural ground that the district court did not adequately justify

the condition, and on the substantive ground that the condition impermissibly

delegates his punishment to the probation officer. We reject both arguments.

    a. *The district court's statement of reasons*

        i. Legal standard

This court has not specifically addressed how a district court must justify a

psychosexual evaluation and treatment condition of supervised release.[13] As with the

Mental Health Condition, Mr. Englehart argues the Psychosexual Evaluation and

Treatment Condition implicates a fundamental liberty and therefore must be justified

by particularized findings of compelling circumstances. Aplt. Br. at 25. He again

relies on our decision in *United States v. Bear*. Aplt. Br. at 25 (citing *Bear*, 769 F.3d

at 1230).[14] But as we explained above, *Bear* does not require more than a generalized

---

[13] In *United States v. Mike*, we said that residential or in-patient sex offender treatment "affects a significant liberty interest" and must be "supported by particularized findings that it does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing." 632 F.3d at 696. But Mr. Englehart has not been ordered to participate in a residential or in-patient program.

[14] The Government points to an unpublished Ninth Circuit decision holding "a psychosexual evaluation does not implicate a particularly significant liberty interest such that the district court was required to make heightened findings before imposing it." *United States v. Newbill*, 588 F. App'x 632, 633 (9th Cir. 2014) (unpublished) (quotations omitted); *See also United States v. Silver*, 685 F. App'x 254, 256 (4th Cir. 2017) (unpublished).

statement of reasons to justify a mental health treatment condition. Because Mr.

Englehart's briefing treats the Psychosexual Evaluation and Treatment Condition as a

form of "mental health evaluation and treatment," *id.* (quoting *Bear*, 769 F.3d at

1230), we analyze it under the same standard we applied above to the Mental Health

Condition.[15]  Under that standard, the district court needed only to provide

"generalized reasons . . . sufficient to allow proper appellate review." *Jereb*, 882

F.3d at 1343.[16]

---

[15] Mr. Englehart argues that psychosexual evaluations are "incredibly invasive," Aplt. Br. at 25, but he does not adequately distinguish psychosexual evaluation from other forms of mental health evaluation. And the record provides little detail about the psychosexual evaluation ordered here. The Government's Motion to Modify Conditions requests that the "defendant . . . participate in and successfully complete a psychosexual evaluation," ROA, Vol 1 at 42, but does not detail what it would entail. Nor does Mr. Englehart's Objection to Proposed Modifications of Supervised Release and Motion to Terminate Supervised Release. ROA, Vol. 2 at 115-19. Nor does the Order Modifying Terms of Supervision. ROA, Vol. 1 at 51-53. And although Dr. Denison testified at the Modification Hearing about "what goes into a sex offender evaluation," including polygraph testing, ROA, Vol. 3 at 75-80, he did not address how it would be conducted with Mr. Englehart or how it might compare with mental health treatment.

[16] This determination does not foreclose a future court from deciding that a heightened standard of review may be necessary depending on the nature of the required evaluation and treatment. But neither Mr. Englehart's briefing nor the record allows us to do so here. *See United States v. Bainbridge*, 746 F.3d 943, 952 n.11 (9th Cir. 2014) ("Because Bainbridge has not presented any authority which would compel this [c]ourt to determine that requiring a sexual deviancy evaluation implicates a 'significant liberty interest,' and we have likewise found no such authority, we decline to do so here.").

28

ii. <u>Application</u>

Applying this generalized-reasons standard to the district court's explanation of reasons for imposing the Psychosexual Evaluation and Treatment Condition, we conclude the district court did not abuse its discretion. Before imposing the condition, the court noted that "nearly two years have gone by" since Mr. Englehart's SOTIPS evaluation, and in that time Mr. Englehart had committed four violations of supervised release, including three violations involving pornography, with "increasing issue." ROA, Vol. 3 at 149. The court found "in that kind of situation with that progression that that is something that deserves to be looked into to . . . restore trust, if nothing else, and to give us some direction going forward with regard to this defendant." *Id.* at 150.

The district court's explanation was thin. But it was sufficient for us to discern that the psychosexual evaluation is reasonably related to both "the history and characteristics of the defendant" and "the need to . . . provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1), (2)(D). Although the district court should have considered each § 3553(a) factor, a special condition need not be reasonably related to all of the factors. *See United States v. Barajas*, 331 F.3d 1141, 1146-47 (10th Cir. 2003). The court's "statement of generalized reasons," though minimal, sufficed. *Martinez-Torres*, 795 F.3d at 1238 (quotations omitted).

Mr. Englehart counters that he already underwent an initial sex offender assessment, and that assessment concluded he was a "low need" for sex offender

treatment. Aplt. Br. at 26; ROA, Vol. 3 at 45. He also argues he is a "different man" than at the time of his 1998 conviction because he is now "emotionally stable" and sober. Aplt. Br. at 27. That may be so. But his SOTIPS evaluator also said that "[o]nce he is able to control his emotions in a healthy manner, we can look at the possibility of getting him . . . sex offender treatment . . . if needed." ROA, Vol. 3 at 45. The district court reasonably concluded that, considering Mr. Englehart's behavior since his initial assessment, a reevaluation with the possibility of treatment was warranted.

*　　*　　*　　*

Because, under our precedent, the Psychosexual Evaluation and Treatment condition does not implicate a "fundamental right or interest," the district court was not required to conduct the "particularly meaningful and rigorous analysis" that we require when such an interest is at stake. *See Koch*, 978 F.3d at 726. The district court's "statement of generalized reasons," though minimal, sufficed. *Martinez-Torres*, 795 F.3d at 1238 (quotations omitted).

b. *Improper delegation*

Mr. Englehart contends the district court impermissibly delegated authority to the probation officer in the Psychosexual Evaluation and Treatment Condition.[17] We disagree.[18]

### i. Legal background

"Article III of the United States Constitution confers the authority to impose punishment on the judiciary, and the judiciary may not delegate that authority to a nonjudicial officer." *Bear*, 769 F.3d at 1230. "In determining whether a particular delegation violates this restriction, courts distinguish between those delegations that merely task the probation officer with performing ministerial acts or support services related to the punishment imposed and those that allow the officer to decide the nature or extent of the defendant's punishment." *Mike*, 632 F.3d at 695. We "focus[] on the liberty interest implicated when determining whether a particular delegation is infirm." *Id.* When a condition "touch[es] on a significant liberty interest[]," "granting the probation officer the discretion to decide whether such conditions will

---

[17] Mr. Englehart also challenges the Mental Health Condition on this ground. Because we vacate the Mental Health Condition for procedural reasons, we consider this argument only as it relates to the Psychosexual Evaluation and Treatment Condition.

[18] The parties dispute whether Mr. Englehart has adequately preserved this issue for our review. We assume without deciding that the issue is preserved because Mr. Englehart's arguments fail under either plain error or abuse of discretion review.

31

be imposed is tantamount to allowing him to decide the nature or extent of the defendant's punishment." *Id.* at 695-96.

Our decisions in *Mike* and *Bear* guide us here. "In *Mike*, we explained that certain mental health treatment tools, like residential treatment, penile plethysmograph testing, and the involuntary administration of psychotropic drugs constitute greater infringements on a defendant's liberty than outpatient mental health care or other more routine treatment and assessment tools." *Bear*, 769 F.3d at 1230 (citing *Mike*, 632 F.3d at 695-96). Conditions that touch on such significant liberty interests, we said, cannot be delegated to the discretion of the probation officer because that would be "tantamount to allowing him to decide the nature or extent of the defendant's punishment." *Mike*, 632 F.3d at 696.

The condition in *Mike*,[19] "due to its open-ended language," "could be read to delegate such discretion." *Id.* But rather than invalidate the condition, we opted to construe it narrowly. We said, "When reviewing challenges to non-specific, all-encompassing conditions like the one here, other courts have opted to construe them in a manner that does not make them infirm." *Id.* "Construing the challenged condition as not delegating to the probation officer the authority to decide whether to

---

[19] The challenged condition in *Mike* required the defendant to "immediately undergo a psychosexual evaluation upon release and begin participating in sex offender treatment, consistent with the recommendations of the psychosexual evaluation, and furthermore, the defendant shall submit to clinical polygraph testing and any other specific sex offender testing, as directed by the probation officer." 632 F.3d at 690.

subject Mike to inpatient treatment or plethysmograph testing, we conclude that it does not delegate the duty of imposing Mike's punishment to the probation officer." *Id.* We thus rejected appellant Mike's challenge to the condition under an abuse of discretion standard. *Id.* at 695-96.

The condition in *Bear* required the defendant to "submit to a sex offender mental health assessment and a program of sex offender mental health treatment, as directed by the U.S. Probation Officer, until such time as the defendant is released from the program by the probation officer." 769 F.3d at 1225. Reviewing for plain error,[20] we interpreted this condition to "reflect the probation officer's representation to the district court that the results of the assessment would dictate the scope of any treatment plan." *Id.* at 1231. We also "read the condition as not delegating to the probation officer the authority to impose conditions that implicate Mr. Bear's significant liberty interests, such as residential treatment, penile plethysmograph testing, or the involuntary administration of psychotropic drugs." *Id.* So construed, we held that the condition did not improperly delegate judicial authority to the probation officer. *Id.*

---

[20] Although *Bear* was a plain error case, its holding applies here because we resolved this issue on the first plain error element. *See* 769 F.3d at 1231 ("Construed narrowly, the trial court did not err in imposing the mental health assessment and treatment conditions of supervised release because they do not improperly delegate judicial authority to Mr. Bear's probation officer."). Mr. Englehart is therefore wrong that "the government's reliance on the plain-error analysis in *Bear* . . . is misplaced." Aplt. Reply Br. at 21.

District courts thus may not grant the probation officer the discretion to decide whether conditions involving significant liberty interests will be imposed. *Mike*, 632 F.3d at 696. We will narrowly construe a broadly worded mental health treatment condition to ensure it does not delegate authority to a probation officer to impose conditions that implicate significant liberty interests—such as inpatient treatment.

### ii. Application

Applying these lessons here, we "read the condition as not delegating to the probation officer the authority to impose conditions that implicate [Mr. Englehart's] significant liberty interests." *Bear*, 769 F.3d at 1231. As read, the challenged condition does not unconstitutionally delegate authority to Mr. Englehart's probation officer to "decide the nature or extent of the defendant's punishment." *Mike*, 632 F.3d at 696. Instead, it merely "task[s] the probation officer with performing ministerial acts or support services related to the punishment imposed." *Id.* at 695.

Mr. Englehart's attempts to distinguish *Mike* and *Bear* are unavailing. He argues that this case is different from *Mike* because "the Court knows the treatment contemplated is very invasive, will require Mr. Englehart to disclose his entire sexual history, and will require Mr. Englehart to disclose extremely painful, dark, and traumatic experiences from his past." Aplt. Br. at 29. He also notes that the "landscape has changed" since *Mike* in that we now require conditions implicating fundamental liberties to be justified with particularized and compelling justifications. *Id.* at 30 & n.10. But as discussed above, neither mental health treatment nor

34

psychosexual evaluations of the type at issue here implicate such a fundamental liberty.

In his reply brief, Mr. Englehart attempts to distinguish *Bear*, arguing we "interpret[ed] [the condition] to reflect the probation officer's representation to the district court that the results of the assessment would dictate the scope of any treatment plan."  769 F.3d at 1231; Aplt. Reply Br. at 25.  Here, he notes, there is no such representation.  But that was not the basis for our separate decision in *Bear* to "[s]imilarly . . . read the condition as not delegating to the probation officer the authority to impose conditions that implicate Mr. Bear's significant liberty interests." 768 F.3d at 1231.

## III. **CONCLUSION**

We vacate the Sexual Material Prohibition and the Mental Health Condition and remand for further proceedings.  We affirm the Psychosexual Evaluation and Treatment Condition.