**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Belisario Domingo MARTINEZ–
TORRES, Defendant—
Appellant.**

No. 14–2084.

United States Court of Appeals,
Tenth Circuit.

July 31, 2015.

Steve Sosa, Assistant Federal Public Defender, Las Cruces, New Mexico, for Defendant–Appellant.

David N. Williams, Assistant United States Attorney (Damon P. Martinez, United States Attorney, with him on the briefs), Albuquerque, New Mexico, for Plaintiff–Appellee.

Before HARTZ, GORSUCH, and MORITZ, Circuit Judges.

HARTZ, Circuit Judge.

The most important thing at sentencing is determining whether the defendant will be incarcerated and, if so, for how long. Other matters, such as restitution and conditions of supervised release, are, appropriately, of secondary concern. But they are not inconsequential and deserve focused attention. Readily avoidable errors regarding these "secondary" matters appear too frequently on our docket. Particularly frustrating is that often the errors were not raised by defense counsel until the appeal. If the prosecutor, the defense attorney, and the district court would devote a bit more time at sentencing hearings to issues beyond incarceration,[1] much time and effort will be saved in the long run.[2]

This is a case in point. Defendant Belisario Domingo Martinez–Torres raises challenges to three conditions of supervised release. Although two were not objected to in district court, the government concedes that they must be set aside on plain-error review. Remand is also necessary on the third challenged condition of release. The error may not be an obvious one, but it might well have been avoided by additional advocacy and exploration of the issue at the sentencing hearing.

## I. BACKGROUND

In July 2008, Defendant, who was 23 years old at the time, pleaded guilty in the

---

1. See Christine S. Scott–Hayward, *Shadow Sentencing: The Imposition of Federal Supervised Release*, 18 Berkeley J.Crim. L. 180, 187, 211–12 (2013) (study of judges in one federal district court found that they spent the great majority of the sentencing hearing focused on imprisonment and turned to supervised release only briefly at the end; they imposed special conditions of release in most cases, often without explanation; and defense attorneys rarely objected to the conditions).

2. We have set aside special conditions of supervised release repeatedly in recent years, see *United States v. Bear*, 769 F.3d 1221, 1229 (10th Cir.2014); *United States v. Butler*, 694 F.3d 1177, 1185 (10th Cir.2012); *United States v. Dougan*, 684 F.3d 1030, 1037 (10th Cir.2012); *United States v. Lonjose*, 663 F.3d 1292, 1303 (10th Cir.2011); *United States v. Mike*, 632 F.3d 686, 698 (10th Cir.2011); *United States v. Wittig*, 528 F.3d 1280, 1289 (10th Cir.2008); *United States v. Matteson*, 327 Fed.Appx. 791 (10th Cir.2009)—even on plain-error review, see *United States v. Dunn*, 777 F.3d 1171, 1177–79 (10th Cir.2015); *United States v. Burns*, 775 F.3d 1221, 1223 (10th Cir.2014); *United States v. Sunday*, 447 Fed.Appx. 885, 889–90 (10th Cir.2012). We have also set aside restitution orders a number of times, see *United States v. Alisuretove*, 788 F.3d 1247, 1258–60 (10th Cir.2015); *United States v. Howard*, 784 F.3d 745, 752 (10th Cir.2015); *United States v. Ferdman*, 779 F.3d 1129, 1141 (10th Cir.2015); *Dunn*, 777 F.3d at 1182; *United States v. Kieffer*, 596 Fed.Appx. 653, 666 (10th Cir.2014) cert. denied, —— U.S. ——, 135 S.Ct. 2825, —— L.Ed.3d —— (2015); *United States v. James*, 534 Fed.Appx. 755, 758 (10th Cir.2013); *United States v. Anderson*, 483 Fed.Appx. 433, 440 (10th Cir.2012)—including several times on plain-error review, see *United States v. Zander*, No. 13–4174, 794 F.3d 1220, 1233–34, 2015 WL 4503264, at *12 (10th Cir. July 24, 2015); *United States v. Gordon*, 480 F.3d 1205, 1212 (10th Cir.2007); *United States v. Blind*, 429 Fed.Appx. 795, 804 (10th Cir. 2011).

United States District Court for the District of New Mexico to possession with intent to distribute 50 kilograms or more of marijuana. *See* 21 U.S.C. § 841(b)(1)(C). The presentence investigation report said that Defendant had been arrested about two years earlier for aggravated sexual assault of a child younger than 14 years of age and the charge was pending trial in Texas state court. The district court sentenced Defendant to 30 months' imprisonment followed by three years of supervised release. In addition to standard conditions of supervised release, the court imposed a special condition requiring that Defendant submit to searches for drugs or weapons at the direction of the probation officer. In January 2014 the court modified the release conditions, ordering Defendant to reside at a residential reentry center in El Paso, Texas, for up to 120 days. It appears that the modification was prompted by the discovery that Defendant had been frequently traveling between El Paso and Juarez, Mexico, to see his family.

Two months later the probation office filed a petition for revocation of supervised release, alleging that Defendant had violated the new special condition by failing to return to the residential reentry center. After a hearing the district court revoked Defendant's supervised release. When asked for its position on sentencing, the government told the court that it would defer to the recommendations of the probation office and the court's judgment. Defense counsel responded that he did not think there were any such probation recommendations. He asked the court to fashion a sentence that would allow Defendant to meet his obligations to his family, explaining that Defendant had not committed any new crimes since commencing his supervision, he was employed during his supervision and worked hard to support his family, and he did not use alcohol or drugs.

After hearing from defense counsel, the court stated:

> [A] couple of things … complicate the situation in [Defendant's] case. One, and the most significant is, is that he's a registered sex offender in the Texas law having been convicted of that crime.… [T]hat creates a heightened risk and issue.… And the reality is that because of that, there is much more constraint on what can be done to ensure where he is, when he's there, and that he's doing what is required.

R., Vol. III at 12–13. The court also admonished:

> [W]hat [Defendant] needs to do is understand the constraints and limitations and abide by them. And if he can't, then the only place that I will find for him is a cell. Because … if he isn't willing to abide by those conditions, then there are no terms or conditions that can be fashioned and he can kill his number in prison.

*Id.* at 13. The court imposed a sentence of two months' imprisonment and two years of supervised release. In addition to standard conditions of supervised release, the court imposed seven special conditions, including the following: (1) Defendant "must refrain from the use and possession of alcohol and other forms of intoxicants"; (2) Defendant "shall undergo a risk assessment and/or psychosexual evaluation and begin participating in sex offender treatment, consistent with the recommendations of the assessment and/or evaluation" and "shall submit to clinical polygraph testing and any other specific sex offender testing, as directed by the probation officer"; and (3) Defendant "shall be prohibited from viewing or possessing any material including photographs, images, books, writings, drawings, videos or video games, depicting and/or describing sexually explic-

it conduct or child pornography as defined in 18 U.S.C. 2256." *Id.*, Vol. I at 22.

Defense counsel objected to the third condition, arguing only that a prohibition on the possession of legal pornography and other legal material describing sexual activity "is beyond the pale." *Id.*, Vol. III at 17. The court responded: "I would note the objection but I would find that based upon the prior criminal history and the risks associated with this Defendant, that such a limitation is appropriate and necessary and in the best interests of the public." *Id.* at 17–18. On appeal Defendant renews his challenge to the sexually-explicit-material condition, and also challenges the conditions prohibiting the use of alcohol and requiring sex-offender treatment and polygraph testing.

## II. DISCUSSION

We review for abuse of discretion a special condition of supervised release to which timely objection was made; that is, we reverse only if "it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests 'a clear error of judgment." *Bear*, 769 F.3d at 1226 (internal quotation marks omitted). In the absence of proper objection, however, we review only for plain error. *See Mike*, 632 F.3d at 691. "To establish plain error, the defendant must show: (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 691–92 (internal quotation marks omitted).

The conditions of release must (1) be "reasonably related" to the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, or the defendant's educational, vocational, medical, or other correctional needs; (2) "involve[ ] no greater

deprivation of liberty than is reasonably necessary" for the purposes of deterring criminal activity, protecting the public, and promoting the defendant's rehabilitation; and (3) be consistent with any pertinent policy statements issued by the Sentencing Commission. 18 U.S.C. § 3583(d); *see id.* § 3553(a); *Bear*, 769 F.3d at 1226. Further, "[t]he district court is required to provide at least generalized reasons for imposing special conditions of supervised release." *United States v. Smith*, 606 F.3d 1270, 1283 (10th Cir.2010).

We vacate all three special conditions. Defendant did not object below to two of the conditions he challenges on appeal—the condition prohibiting the use or possession of alcohol and other intoxicants, and the condition requiring psychosexual evaluation, sex-offender treatment, and polygraph testing. But we need not review these conditions. The government concedes that the district court plainly erred in imposing them. Since we must remand for resentencing in any event, we vacate the two conditions and remand for further consideration.

The remaining challenged condition prohibits Defendant from viewing or possessing any material depicting or describing sexually explicit conduct or child pornography as defined in 18 U.S.C. § 2256. Although the objection to the condition was perfunctory, the government does not challenge its adequacy, so we will assume it sufficient to preserve the issue for abuse-of-discretion review.

Section 2256(2)(A) defines *sexually explicit conduct* as "actual or simulated . . . (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person." (Section

2256(2)(B) has a somewhat different definition of *sexually explicit conduct* for the context of child pornography; but we assume, and neither party disputes, that the child-pornography definition applies only to the part of the special condition that prohibits child pornography.) As indicated by defense counsel's colloquy with the district court at sentencing, the condition covers legal adult pornography and other legal materials depicting or describing sexually explicit conduct.[3]

Defendant contends that this condition is not reasonably related to his history or the other statutory factors, *see* 18 U.S.C. § 3583(d)(1); *id.* § 3553(a), and hence involves a greater deprivation of liberty than is reasonably necessary to deter criminal activity, protect the public, and promote his rehabilitation, *see id.* § 3583(d)(2); *id.* § 3553(a). We agree. The district court's sole expressed reason for the condition was that Defendant had been convicted of a sex offense—intentionally causing the penetration of the sexual organ of a child younger than 14 years of age. But that is not enough.

▋ Before imposing the special condition, the district court needed to make an individualized assessment of whether it was appropriate for Defendant. We recognize that such an assessment is not always necessary before imposing a condition of supervised release. Some conditions are required by statute. *See, e.g., id.* § 3583(d) (the defendant shall "not commit another Federal, State, or local crime"; the defendant shall "not unlawfully possess a controlled substance"; if the defendant is "required to register under the Sex Offender Registration and Notification Act [SORNA]," he shall "comply with the requirements of that Act"). Some are suggested for all defendants by the sentencing guidelines. *See, e.g.,* USSG § 5131.3(c)("(7) the defendant shall refrain from excessive use of alcohol"; "(9) the defendant shall not associate with any persons engaged in criminal activity"). Others are suggested by the guidelines for certain types of offenders. *See, e.g., id.* § 5131.3(d)("(1) If the instant conviction is for a felony, or if the defendant was previously convicted of a felony or used a firearm or other dangerous weapon in the course of the instant offense," the defendant shall not "possess[ ] a firearm or other dangerous weapon"; "(7) If the instant offense of conviction is a sex offense," the defendant shall "participate in a program approved by the United States Probation Office for the treatment and monitoring of sex offenders," be subject to limits on computer use if the defendant used one in the commission of the offense, and submit to searches of any property by law-enforcement or probation officers). When, however, neither the Sentencing Commission nor Congress has required or recommended a condition, we expect the sentencing court to provide a reasoned basis for applying the condition to the specific defendant before the court. *See United States v. Perazza–Mercado,* 553 F.3d 65, 77 (1st Cir.2009) (rejecting the notion that a "ban on the possession of adult pornography should be a condition of supervised release in every case where a defendant is convicted of a sexual offense with a minor," explaining that "[t]he Sentencing Commission creates such generally applicable conditions of supervised release, not appellate judges"); *United States v. Burroughs,* 613 F.3d 233, 243 (D.C.Cir.2010) (following *Perazza–Mercado* ).

---

**3.** Defendant does not challenge the ban on viewing or possessing child pornography, which is already proscribed by the mandatory condition that Defendant shall not commit any crimes. *See* USSG § 5D1.3(a)(1).

Absent here is the necessary individualized assessment. It is, of course, quite relevant that Defendant was a convicted sex offender. But the district court needed to explain why the restriction on legal sexually explicit material was supported by the statutory factors in this case. Although we are not hypertechnical in requiring the court to explain why it imposed a special condition of release—a statement of "generalized reasons" suffices, *see Smith*, 606 F.3d at 1283—the explanation must be sufficient for this court to conduct a proper review. Particularly where the condition of release implicates constitutional interests, such as the right to possess sexually explicit materials involving adults, *see United States v. Williams*, 553 U.S. 285, 288, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008), more detail may be required if the reasons for the restriction are not matters of common knowledge. *See Burns*, 775 F.3d at 1222 (The condition of supervised release "intrudes on [the defendant's] constitutional right to familial association. Because of this intrusion on a constitutional right, the district court should have made particularized findings before restricting [the defendant's] contact with his daughter.").

For example, in *Dougan* we vacated the defendant's special sex-offender-related conditions of release because his "seventeen-year-old conviction for a sexual battery was too remote in time to be reasonably related to the imposition of special sex-offender-related conditions of supervised release where the crime of conviction was robbery of a post office." 684 F.3d at

1037. The government had not presented any evidence that the defendant had a propensity to commit sex offenses in the future or that he had committed any sex offenses since his seventeen-year-old conviction. *See id.* The defendant had "shown no proclivity toward sexual violence over the last seventeen years, and he [had] never shown a proclivity toward sexual interactions with children." *Id.* We explained:

> [W]hile we recognize that it is permissible to impose special sex-offender-related conditions of supervised release even where the crime of conviction is not a sex crime, in such cases we would require a stronger nexus than we have here between the defendant's history and characteristics and the sex-offender-related conditions before we could conclude that the latter were "reasonably related" to the former, as required by 18 U.S.C. § 3583(d)(1).

*Id.* at 1036 (citation omitted). One of the conditions provided that the defendant was not "allowed to view, purchase, possess, or distribute any form of pornography depicting sexually explicit conduct as defined in 18 U.S.C. § 2256(2)—unless approved for treatment purposes—or frequent any place where such material [was] the primary product for sale." *Id.* at 1032.[4]

Other circuits have ruled similarly. In *United States v. Salazar*, 743 F.3d 445, 448, 453 (5th Cir.2014), the Fifth Circuit vacated a condition of release like the one in this case. The defendant's crime of conviction was failing to register under

---

**4.** The district court in *Dougan* imposed the following additional challenged conditions of release: the defendant (1) was "required to submit to a sex-offender mental health assessment and a program of offender mental health treatment, potentially including a polygraph and a penile plethysmograph"; (2) was "required to waive all rights to confidentiality regarding the treatments"; (3) was not "al-

lowed at any residence where children under the age of eighteen reside[d] without the prior written permission of his probation officer"; and (4) was not "allowed to associate with children under the age of eighteen except in the presence of a responsible adult who [was] aware of [the defendant's] background and who ha[d] been approved by his probation officer." 684 F.3d at 1032.

SORNA while serving a suspended sentence for third-degree sexual abuse. *See id.* at 447. Upon revocation of the defendant's supervised release, the district court imposed a condition restricting the defendant's access to sexually oriented materials. *See id.* at 447–48. On appeal the circuit court first said that a district court is required to justify the imposition of special conditions of release, though conditions may be upheld if the district court's reasoning can be inferred from the record. *See id.* at 451. It held that the district court had abused its discretion by failing to explain how the condition was reasonably related to the statutory sentencing factors or to provide sufficient reasons for the condition. *See id.* at 451–53. And based on the court's review of the record, there was "insufficient evidence of a reasonable relationship between the condition and the statutory factors." *Id.* at 453. The court explained that "[n]othing in [the defendant's] history suggest[ed] that sexually stimulating materials fueled his past crimes" and "[i]n fact, there ha[d] been no evidence presented that [the defendant] ever used pornography." *Id.* at 452. Further, there was "little indication that [the defendant] ha[d] a high potential for committing future sexual crimes" and "[i]t [was] hard to imagine how preventing [the defendant] from accessing sexually stimulating materials would prevent future criminal conduct when there [was] no indication in the record that [the defendant] ha[d] an unhealthy relationship with such materials or that such materials contributed to his underlying crimes or other violations." *Id.*

In *United States v. Kelly,* 625 F.3d 516, 519–20 (8th Cir.2010), the Eighth Circuit also emphasized the need for the district court to conduct an individualized inquiry before imposing as a condition of release a restriction on possessing or controlling materials containing nudity or depicting or alluding to sexual activity. The defendant,

whose crime of conviction was possession of a firearm by a convicted felon, had two prior sexual-assault convictions. *Id.* at 518. The court said that "in crafting any special conditions [not directly related to the offense of conviction], district courts must be careful to conduct an inquiry on an individualized basis, looking at the specific facts of the defendant's criminal history and his particular offenses." *Id.* at 519–20 (internal quotation marks omitted). Because the district court had not made individualized findings and the probation officer's justification for the condition was only the defendant's prior sexual-assault convictions, the condition did not have the required reasonable relationship to the sentencing factors. *See id.* at 520. The court also said that it was "particularly reluctant to uphold sweeping restrictions on important constitutional rights," *id.* (internal quotation marks omitted), and held that the condition was constitutionally overbroad, *id.* at 522.

And in *United States v. Voelker,* 489 F.3d 139, 150–53 (3d Cir.2007), the Third Circuit vacated a condition prohibiting the possession of sexually explicit materials. After the defendant pleaded guilty to possession of child pornography, the district court imposed imprisonment and the challenged condition of supervised release. *See id.* at 142–43. The Third Circuit said that although the district court did not explain its reasons for imposing the condition, it could examine the record to determine whether the condition was reasonably related to the statutory factors. *See id.* at 150–51. The court concluded, however, that the condition did not have the requisite nexus to the goals of supervised release "and the District Court's failure to explain its reasons ma[de] [the court's] review all the more difficult." *Id.* at 150. The court explained:

> At first blush, this restriction appears to be sufficiently related to [the defen-

dant's] offense to survive his challenge. Although a ban on accessing sexually explicit material involving children would certainly be reasonable, there are First Amendment implications for a ban that extends to explicit material involving adults.... [N]othing on this record suggests that sexually explicit material involving only adults contributed in any way to [the defendant's] offense, nor is there any reason to believe that viewing such material would cause [the defendant] to reoffend.

*Id.* at 151 (footnote omitted). The court emphasized that even if the condition served "some unexplained rehabilitative, deterrent or penological purpose," the purpose needed "to be balanced against the serious First Amendment concerns endemic in such a restriction." *Id.* (footnote omitted). Although in an earlier case the same sentencing judge had justified a prohibition on adult pornography based on the difficulty of knowing whether the persons depicted in pornography were minors, "that justification [did] not appear anywhere on [the] record" in *Voelker* and the court refused to "scour the jurisprudence of a sentencing judge in an attempt to divine the justification for a sentence based on similar sentences that the judge may have explained in a similar case years before, especially since § 3583 requires sentencing courts to explain the sentences they impose." *Id.* at 153; *see also United States v. Dotson,* 715 F.3d 576, 586 (6th Cir.2013) ("[The defendant's] conviction stemmed in part from his possession of sexually explicit images of children, and it is quite likely that the district court viewed exposure to any pornographic or sexually oriented materials as placing [the defendant] at risk of reoffending. However, the court did not explain its reasoning.... Although it is possible that the district court will provide an analysis comparable to that previously approved [in earlier opinions] and impose the same restrictions,

we find it necessary to remand so that the district court may clarify, on the record, why it deems these intended special conditions appropriate." (citation, brackets, and internal quotation marks omitted)); *Perazza–Mercado,* 553 F.3d at 76 ("If the district court believed that there was some relationship between the defendant's possession and use of adult pornography and the likelihood that he would engage in sexual misconduct involving young girls, the court should have explained the basis for that conclusion.").

The district court here did not refer to any expert study or the court's own observations or experience to support the restriction on sexually explicit materials. And there is certainly expert literature suggesting, at the least, that a more nuanced approach is preferable to painting with a broad brush. *See* Nathan R. Moran & Ben D. Atkins, *Pornography and Crime, in* The Encyclopedia of Theoretical Criminology 619, 622 (J. Mitchell Miller ed., 2014) ("a review of pertinent literature indicates that pornography alone does not cause individuals to commit sexually violent or other types of crimes (excluding crimes involving illegal porn itself)"); Milton Diamond, Eva Jozifkova & Petr Weiss, *Pornography and Sex Crimes in the Czech Republic,* 40 Archives of Sexual Behav. 1037, 1040 (2011) (after legal shift in Czech Republic from prohibiting to allowing pornography, incidence of reported sex-related crimes did not increase and child sex abuse continued to decline except for a brief increase); Melissa Hamilton, *The Efficacy of Severe Child Pornography Sentencing: Empirical Validity or Political Rhetoric?,* 22 Stan. L. & Pol'y Rev. 545, 577 (2011) ("Empirical evidence of a correlation between pornography and sexual assault is equivocal."); Christopher J. Ferguson & Richard D. Hartley, *The Pleasure Is Momentary ... the Expense Damnable? The Influence of Pornography on*

*Rape and Sexual Assault,* 14 Aggression & Violent Behav. 323, 328 (2009) (pornography availability does not seem to cause an increase in the incidence of rape, and statistics might suggest the reverse effect); Drew A. Kingston et al., *Pornography Use and Sexual Aggression: The Impact of Frequency and Type of Pornography Use on Recidivism Among Sexual Offenders,* 34 Aggressive Behav. 341, 343–34, 348–49 (2008) (for male sex offenders who score highly on risk factors for sexual aggression, frequent pornography consumption increases recidivism; but pornography use has little predictive value for those assessed as low-risk for sexual aggression); Neil Malamuth & Mark Huppin, *Drawing the Line on Virtual Child Pornography: Bringing the Law in Line with the Research Evidence,* 31 N.Y.U. Rev. L. & Soc. Change 773, 825–26 (2007) (exposure to nonconsenting pornography can "add fuel to the fire" for individuals with a relatively high risk for offending, as revealed by a previous sex-offense conviction or scoring highly on risk factors for sexual aggression (internal quotation marks omitted)); Michael C. Seto et al., *The Role of Pornography in the Etiology of Sexual Aggression,* 6 Aggression & Violent Behav. 35, 46 (2001) ("We argue that individuals who are already predisposed to sexually offend are the most likely to show an effect of pornography exposure and are the most likely to show the strongest effects. Men who are not predisposed are unlikely to show an effect; if there actually is an effect, it is likely to be transient because these men would not normally expose themselves to violent pornography."); *see also United States v. Siegel,* 753 F.3d 705, 709 (7th Cir.2014) (briefly discussing the literature); *United States v. Zobel,* 696 F.3d 558, 577 (6th Cir.2012) ("[B]ecause the district court relied upon the connection that [the government's expert] drew between [the defendant's] pornography addiction and his risk of recidivism, its ban on pornography and sexually explicit materials was primarily designed to meet the ends of rehabilitation and protection of the public and must therefore be upheld on plain error review." (internal quotation marks omitted)); *Perazza–Mercado,* 553 F.3d at 76–77 ("[T]he dissent makes the behavioral assumption that access to adult pornography increases the likelihood that any individual convicted of sexual misconduct with a minor would reoffend. Other than asserting that this assumption is 'rather obvious,' the dissent offers no support for it. Neither the probation officer nor the prosecutor in this case made such a behavioral claim, and the trial judge did not invoke any experience with prior sentences to support the ban on adult pornography." (footnote and internal quotation marks omitted)).

We need not agree with the specific holdings in the cases from other circuits to conclude that there is not enough in the record before us to justify the restriction on Defendant's possession of sexually explicit material. The district court may have relied on scientific literature or personal experience, but none was cited for the record. Further, there is nothing in the record suggesting that Defendant ever viewed pornography of any kind or that sexually explicit materials contributed to his prior offense in any way. *Cf. United States v. Miller,* 665 F.3d 114, 136 (5th Cir.2011) (upholding restriction on sexually oriented materials based on evidence in record that "consumption of adult pornography impinged on [the defendant's] daily life"); *United States v. Thompson,* 653 F.3d 688, 694 (8th Cir.2011) ("[W]e have repeatedly upheld similar bans on the possession of both adult and child pornography when a defendant has been convicted of possessing, receiving, or distributing child pornography.").

We recognize that on two occasions this court has upheld similar conditions, but both cases are distinguishable. In *Mike* we rejected on plain-error review the defendant's argument that the condition prohibiting access to sexually explicit materials was impermissible because there was no evidence that he had ever abused or even possessed pornography in the past. *See* 632 F.3d at 700–01. We did not say that there was no error; rather, if there was an error, it was not an obvious one. In light of a circuit split on this issue and the defendant's "background, namely the psychosexual evaluations performed in 2004 and 2005, the 2008 mental health assessment, and the gruesomeness of his 1997 sex offense, we [could not] say that it [was] obvious or clear that the ban on his possession of sexually explicit materials [was] not reasonably related to any of the factors discussed in 18 U.S.C. § 3553(a)." *Id.* at 701. We also said that "*[g]iven the current state of the law,*" it was not "clear or obvious that the imposition of a condition prohibiting a defendant, who has committed a sexual offense, but not a sexual offense involving pornography, from possessing legal, adult pornography" involved a greater deprivation of liberty than reasonably necessary. *Id.* (emphasis added). An affirmance on plain-error review, however, cannot bind us in this case, where we review for abuse of discretion. In the absence of controlling circuit precedent, a district-court ruling will survive plain-error review if it appears that other circuits are divided on the issue. In contrast, when we review for abuse of discretion, we will examine more deeply whether the apparent differences in other circuits can be reconciled and, in any event, we will reach our own conclusion about the governing law. *See United States v. Norris,* 319 F.3d 1278, 1287 (10th Cir.2003) (earlier decision "does not control here because it involved a plain error review"), *limited on other*

grounds by *United States v. Hill,* 539 F.3d 1213, 1219 (10th Cir.2008).

In the second case, *United States v. Hahn,* 551 F.3d 977, 979 (10th Cir.2008), the defendant's offense of conviction was misapplication of bank funds, but he had a prior conviction for a sex offense. We upheld the imposition of sex-offender special conditions even though "the conduct at which they [were] targeted [was] unrelated to the offense of conviction." *Id.* at 984. Although one of the 12 conditions was a restriction on possession of sexually oriented material, *see id.* at 982 n. 9, we did not address the specific conditions. We noted that the defendant did not "specify *why* [the six] conditions [challenged as excessively restricting his liberty were] particularly problematic," *id.* at 985, and that because of the defendant's failure to direct his objection at sentencing to particular conditions, the district court had not had the opportunity to address each condition specifically and tailor it if necessary, *see id.* at 985–86. *Hahn* does not bind us to affirm the imposition of each of the 12 conditions regardless of the specifics of the case or the arguments presented by counsel. *Compare Hahn,* 551 F.3d at 982 n. 9, 986 (upholding conditions requiring that defendant "(3) not have contact with children under the age of eighteen without prior written permission of probation officer," "(4) not engage in any occupation, business, or profession with access to children under the age of eighteen without prior written approval of probation officer" and "(11) not subscribe to or use any Internet service without first receiving written permission from probation officer,"), *with Dunn,* 777 F.3d at 1174, 1176–79 (vacating restrictions on computer and internet use and monitoring requirement), *and Bear,* 769 F.3d at 1225, 1229 (vacating restrictions on defendant's contact with minors to extent that they apply to his own children), *and Mike,* 632 F.3d at 690, 698

(vacating prohibition on occupations with access to children).

We conclude that on this record the district court abused its discretion in imposing the special condition prohibiting Defendant from viewing or possessing materials depicting or describing sexually explicit conduct.

## III. CONCLUSION

We VACATE the three challenged conditions and REMAND for further proceedings.