**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**May 8, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

NATHANIEL KORNACKI,

    Defendant - Appellant.

No. 24-1071
(D.C. No. 1:15-CR-00062-JLK-1)
(D. Colo.)

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

NATHANIEL KORNACKI,

    Defendant - Appellant.

No. 24-1073
(D.C. No. 1:19-CR-00303-JLK-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **MURPHY**, and **EID**, Circuit Judges.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. INTRODUCTION

Nathaniel Kornacki appeals from district court orders imposing upon him special conditions of supervised release. The special conditions require prior authorization for Kornacki to use any internet capable devices (the "prior-authorization condition")[1] and require Kornacki to allow the United States Probation Office to install monitoring software on any such approved devices (the "monitoring-software condition").[2] Kornacki asserts these special conditions are insufficiently linked to his offenses, involve greater deprivations of liberty than reasonably

---

[1] This condition, Special Condition No. 3, provides as follows:

Your use of computers and Internet capable devices will be limited to those . . . which the probation officer authorizes. The probation officer must not prohibit lawful Internet use except to impose restrictions on the types of . . . Internet capable devices that you may use, to provide necessary restrictions to facilitate correctional treatment and rehabilitation, and to protect the public from any further crimes. Any . . . Internet capable device must be able to be effectively monitored by and comply with the requirements of monitoring software utilized by the Probation Office. You must disclose any username or identification(s) and password(s) for all computers or Internet capable devices to the probation officer.

[2] This condition, Special Condition No. 4, provides as follows:

You must allow the probation officer to install software/hardware designed to monitor activities on any computers or Internet capable device you are authorized by the probation officer to use. This monitoring may record any and all activity on the device, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations. You must not attempt to remove, tamper with, reverse engineer, or in any way circumvent the software/hardware.

2

necessary to achieve the purposes of sentencing, and are not the product of an individualized assessment. This court concludes Kornacki's appellate contentions are without merit. Thus, exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we **affirm** the district court's judgments.

## II. BACKGROUND

In 2010, Kornacki was convicted in Tennessee state court of felony sexual battery of a fifteen-year-old girl. *See* Tenn. Code Ann. § 39-13-505. He was sentenced to a two-year term of probation, but his probation was revoked because he, inter alia, "failed to attend sex offender treatment or a psychosexual evaluation" and "moved into a residence where a minor child was present." He was then sentenced to a two-year term of imprisonment. Based on this sexual-battery conviction, Kornacki is a "sex offender" under the Sex Offender Registration and Notification Act ("SORNA"). *See* 34 U.S.C. §§ 20901 to 20962. He is required to register as a sex offender and to continually update/maintain his current registration. *See id.*; *see also* 18 U.S.C. § 2250 (criminalizing failure to comply with SORNA's registration requirements).

Upon his release from state prison, Kornacki failed to comply with state-based sex-offender registration requirements. He pleaded guilty in 2013 to a state failure-to-register charge and was ordered to serve an approximately one-year term of probation. In 2014, Kornacki was again arrested on a Tennessee state failure-to-register charge. He posted bond and absconded to Colorado.

In early 2015, federal law enforcement officers arrested Kornacki in Colorado. He was charged with failure to register as required by SORNA. He pleaded guilty.[3] The district court sentenced Kornacki to twenty-one months' imprisonment and five years' supervised release. The district court imposed a special condition of supervised release that mirrors the prior-authorization condition. It required Kornacki's use of "Internet access devices [] be limited to those the defendant requests to use, and which the probation officer authorizes." The same special condition imposed a requirement analogous to the software-monitoring condition; it obligated Kornacki to submit any computer-like device "to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct." In imposing sentence, the district court explained why it found Kornacki's case concerning:

> [W]hen I look at your record, with the failure to report and register, . . . I don't think that the criminal justice system has made a dent on you. You seem to do what you want to do. And I—really, I'm amazed that the recommendation is for five years of supervised release. It could be up to life; and the Government, probation department, and your attorney have all recommended the five years. And I'm listening to them. That's what I'll do, but I'm very leery of it. I think the chances of your coming back into violation of the law are just extremely high; nevertheless, that's the recommendation.

---

[3] This conviction, No. 1:15-cr-00062-JLK-1, referred to throughout the remainder of this opinion as "the 2015 case," relates to the first of the consolidated appeals, No. 24-1071.

Kornacki neither objected to the special conditions of supervision, nor appealed any aspect of his sentence.

A probation officer charged Kornacki in 2016 with violating three conditions of supervision release: (1) failing to reside in and observe the rules of the Residential Reentry Center ("RRC"), (2) escape from the RRC, and (3) failure to register as a sex offender. Kornacki admitted all three violations. The district court revoked Kornacki's supervised release, sentenced him to term of twenty-one months' imprisonment, and ordered him to serve an additional five years' supervised release. For the second time, the district court imposed upon Kornacki computer-related special conditions of supervision that mirrored the prior-authorization and monitoring-software conditions. The district court again emphasized its concern with Kornacki's lack of amenability to supervision:

> I'd like to point out that having been sentenced as a sex offender, and this supervised release period is for five years, if there are any violations of the supervised release in the next go-around, the supervised release can be continued and this next time it will be my recommendation that it be supervision for life.

Kornacki did not object to the computer-related special conditions and did not appeal his sentence.

In 2019, a probation officer again charged Kornacki with violating his terms of supervised release. Kornacki admitted to the following three violations: (1) failure to comply with the rules of the RRC, (2) escape from the RRC, and (3) failure to comply with the rules and restrictions specified by the sex offender treatment agency. At approximately the same time, the government filed an information charging

Kornacki with escape. *See* 18 U.S.C. § 751(a). This charge stemmed from Kornacki's

violation of one of the terms of his supervised release—his escape from the RRC.

Kornacki pleaded guilty to the charge[4]; his plea agreement set out the factual basis

for his guilty plea:

> The defendant began his second term of federal supervised release in [the 2015 case] on May 8, 2018. On that date, he reviewed and signed the applicable standard and special conditions of supervision . . . . The conditions included, among other things, "[] You must reside in [RRC] for a period of six months, to commence upon release from confinement and must follow the rules and regulations of that facility." On May 8, 2018, the defendant began residing at Independence House South Federal (IHSF) in Denver County, and on May 11, 2018, he completed a sex offender registration form listing IHSF as his residence.
>
> The defendant was advised at the outset of his residence at IHSF, and by signage at IHSF, that failure to return within the time prescribed by the facility rules would be deemed escape.
>
> On October 8, 2018, the defendant checked out of IHSF for work and to attend sex offender treatment. He never made it to either, and he did not return to IHSF. The defendant did not have permission to remain away from IHSF . . . , and he knew that he did not have permission to leave custody.

The district court resolved the petition to revoke Kornacki's supervision in the

2015 case and sentencing in the 2019 case in a consolidated hearing. It noted the

parties agreed to a package sentence of thirty-six months' imprisonment. The

government explained the agreement stemmed from a recognition amongst the

"stakeholders" that Kornacki engaged in "the same repeated behavior, the same

---

[4] This conviction, No. 1:19-cr-00303-JL-1, referred to throughout the remainder of this opinion as "the 2019 case," relates to the second of the consolidated appeals, No. 24-1073.

particular violations, time and time again." His conduct led the stakeholders to conclude "it was necessary to have graduated punishment." Although frustrated by Kornacki's recalcitrance,[5] the district court accepted the parties' sentencing recommendation. It imposed a twelve-month sentence of imprisonment for the supervised release violations in the 2015 case, imposed a twenty-four-month sentence of imprisonment on the escape conviction in the 2019 case, and ordered the sentences to run consecutively. As to supervised release, the district court imposed a three-year term in the 2019 case, a five-year term in the 2015 case, and ordered the terms of supervised release to run concurrently. The district court did not impose any special conditions of supervision, noting Kornacki consistently refused to comply with such conditions. The district court stated as follows: "No, no special conditions. They haven't been successful in the past. If Mr. Kornacki wants to avail himself of programs that are offered by the Bureau of Prisons or on supervised release, they'll be provided to him; but I don't see any sense in imposing special conditions that he's not going to follow."

---

[5] The district court stated as follows:

> I don't really think that anything I say is going to be of any help to you. But the various agencies have tried to help, and you haven't cooperated with them. The one that ends up doing the time is you, nobody else. It's up to you. If you want to spend the rest of your life after you get through with all of this doing the same sort of thing, you'll be in and out of prison. If you want to comply with the rules, you can live a decent and productive life from here on out; but that's up to you.

In 2023, Kornacki was charged for a third time with violating the conditions of his supervised release in the 2015 case and for the first time with violating the conditions of his supervision in the 2019 case. The petition listed six alleged violations of supervision. In accompanying violation reports filed in each case, the probation officer averred Kornacki "was generally unstable in the community for this term of supervised release." The probation officer "was forced to investigate the defendant's circumstance rather than receiving clear information from the defendant." Notwithstanding the probation officer's "consistent reminders" and scheduling with him to submit documents, Kornacki "still struggled to establish consistent compliance with submitting required documents." Kornacki also failed to keep probation informed as to his employment and housing. Referencing the district court's previous futility-based decision to not impose special conditions, the probation officer averred as follows: "During the term of supervision, the undersigned repeatedly encouraged the defendant to take advantage of the minimal supervision requirements as Ordered by the Court, yet he still struggled to meet the low standard." In the 2015 case, the probation officer recommended Kornacki's supervision be revoked; he be sentenced to a term of imprisonment of twenty-four months; and he be ordered to serve an additional five-year term of supervised release, subject to special conditions designed to further his rehabilitation.[6] Those proposed

---

[6] Perhaps recognizing the likelihood of a substantial term of supervised release in the 2015 case, the probation officer in the 2019 case recommended a twenty-four-month term of imprisonment upon revocation, with no additional supervision.

8

special conditions included both the prior-authorization and software-monitoring conditions. The probation officer offered the following justification for the proposed special conditions:

> The defendant has created continual difficulties for himself during his term of supervised release. His poor attitude and general lack of engagement presents an elevated risk to the community. The defendant's failure to openly communicate with the probation office and relevant registering agencies is consistent with his historical law violations, specifically failure to register. This behavior is very concerning and reflect[s] a general inability or unwillingness to comply with the terms of supervised release . . . .
>
> . . . [I]t is believed that the above recommendations will serve as a sufficient, but not greater than necessary, sanction to address the breach of trust he has imposed on the Court and protect the public from further crimes of the defendant, to afford adequate deterrence to criminal conduct, and to promote respect for the law.
>
> During the defendant's term of supervised release, it seemed he was unable to budget his money and pay for his responsibilities. The defendant needs additional special conditions to assist him in his savings and to also monitor the places where he purchases items and his shopping habits due to his past dishonesty with his whereabouts in the community. The defendant also struggled with open communication with the probation officer. A combination of substance abuse treatment/testing, restricted contact with minors, a search condition and computer monitoring will assist in the appropriate supervision of the defendant. The defendant will be in need of an RRC placement to avoid the probability of him releasing homeless and further support his requirement to register as a sex offender at an approved address.

The district court resolved the petitions to revoke in the 2015 and 2019 cases in consolidated hearings in early 2024. At an initial hearing, Kornacki admitted violating five conditions of supervision: reporting changes of address to the probation officer, living at a place approved by the probation officer, allowing the probation officer to conduct a home visit, notifying the probation officer of changes in

9

employment, and maintaining employment. The government asked the district court to impose upon Kornacki significant, consecutive sentences. Most concerning to the government was "the attitude of this defendant who has expressed in no uncertain terms to the probation officer that he does not believe he needs to comply with [his terms of supervision], that he won't do so, and that he will make the probation officer track him down rather than simply check in as required." Kornacki's probation officer testified as to the propriety of the recommended special conditions:

> [Probation officer]: So with respect to internet, in his [2015] case Mr. Kornacki had illegal contact with a minor female. Oftentimes minor females are accessible on the internet, so even if the crime isn't committed on the internet, there is an interest to monitor his activity on the internet to ensure that he is not gaining access to additional victims.
>
> . . . .
>
> [Prosecutor]: And in your 12 years of experience, are these the sorts of special conditions that are added when a person cannot comply or has not complied with standard conditions?
>
> [Probation officer]. Yes.

In imposing sentence, the district court observed that during the time of Kornacki's supervision, "there is no indication that he has ever paid attention to it at all and has refused to cooperate or to accommodate his own standards with those that are imposed by the sentencing supervised release provisions." It noted "the fact is there hasn't been a significant compliance with the conditions of supervised release or the special conditions." The district court found the recommended special conditions, specifically including the prior-authorization and monitoring-software conditions, were "reasonably related to the factors set forth in [18 U.S.C.

10

§ 3553(a)(1), (a)(2)] and involved . . . only such deprivations of liberty or property as are reasonably necessary to accomplish the goals of sentencing." It also found "the special conditions are appropriate based on the nature and circumstances of the offense and the history and characteristics of this particular defendant."[7] The district court sentenced Kornacki in the 2015 case to twenty-four months' imprisonment and five years' supervised release. It sentenced Kornacki in the 2019 case to twenty-four months' imprisonment and three years' supervised release, both to be served concurrently to the terms of imprisonment and supervised release imposed, respectively, in the 2015 case.

The day after the initial revocation hearing, the district court issued a Fed. R. Crim. P. 35 order, reopening Kornacki's "sentencing on the revocation of his

---

[7] In rejecting Kornacki's request to alter or omit the special conditions, the district court leaned heavily on his history of non-compliance:

> I am not making any modifications to the special conditions. And I want to advise [defense counsel] I appreciate your presentation and your analysis, but the fact is there hasn't been a significant compliance with the conditions of supervised release or the special conditions. And under those circumstances, the way to get out of supervised release is in the hands of your client and not the Court and not the probation office. If he demonstrates while on supervised release that he can comply and that he, in fact, does and that we don't come back here for a fourth revocation proceeding, then he can petition the Probation Department . . . to stop or modify those conditions.

> But it has to be demonstrated first that his attitude has changed. I am not taking his word for it because in the past we have and it didn't happen. So your performance is up to you. You are either going to comply with these conditions, and if you do and you show that you can successfully comply with these conditions, then you can petition to be relieved of them, but not now.

11

supervised release." The order recognized an error at sentencing necessitated additional proceedings.[8] It set an additional hearing and allowed the parties to submit additional briefing. Kornacki filed a brief in support of his objections to all special conditions of supervision. As to the prior-authorization and monitoring-software special conditions, Kornacki simply argued as follows:

> On cross examination, Probation further testified [at the initial revocation hearing] that they have received no indication that Mr. Kornacki has had inappropriate communication with any minors during his time under supervision and that they have received no indication that he had used internet capable devices to do anything sexually inappropriate with a minor. Nothing in Probation's testimony, or the record as a whole, establishes that the requested internet monitoring conditions are reasonably related to Mr. Kornacki specifically. The fact that minor females are accessible on the internet in general is insufficient information for the Court to find that the government met its burden in relation to this requested condition of supervision.

The district court then held a second revocation hearing. After fixing the technical sentencing issues identified in the Rule 35 order, the district court proceeded to reconsider the special conditions of supervision. Although the district court decided to modify or eliminate some special conditions, it left intact the prior-authorization and software-monitoring conditions. The district court emphasized

---

[8] The order stated as follows:

At the conclusion of yesterday's revocation hearing, counsel reminded me that the maximum term of supervised release that could be imposed for Defendant Nathaniel Kornacki in [the 2019 case] is three years, and so I included a three-year term of supervised release . . . in that case. However, pursuant to 18 U.S.C. [§] 3583(h), with a 24-month term of imprisonment, the maximum term of supervised release that could be imposed in that case is 12 months.

Kornacki's stubborn disregard "for even the most basic conditions of supervision." It then concluded the relevant conditions were consistent with this court's decision in *United States v. Blair*, 933 F.3d 1271, 1274-81 (10th Cir. 2019). That is, the restrictions give Kornacki reasonable access to the internet, a necessary tool of modern life, while (1) giving a probation officer the tools necessary to prevent additional criminality on Kornacki's part, (2) facilitating Kornacki's path to rehabilitation, and (3) protecting the public. *See id.* at 1280. Finally, the district court again found the prior-authorization and monitoring-software special conditions were "appropriate based on the nature and circumstances of [Kornacki's] offenses and [his] history and characteristics, that they are reasonably related to the factors as set forth in [§ 3553(a)(1), (a)(2)] and involve such deprivations of liberty or property as are reasonably necessary to accomplish the statutory goals of sentencing."

## III. ANALYSIS

### A. Legal Background

District courts have broad, but not unlimited, discretion to impose special conditions of supervised release. *United States v. Mike*, 632 F.3d 686, 692 (10th Cir. 2011). That discretion is bounded by the provisions of 18 U.S.C. § 3583(d), which require any special condition:

> (1) be reasonably related to the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, or the defendant's educational, vocational, medical, or other correctional needs;

13

(2) involve no greater deprivation of liberty than is reasonably necessary to achieve the purpose of deterring criminal activity, protecting the public, and promoting the defendant's rehabilitation; and

(3) be consistent with any pertinent policy statements issued by the Sentencing Commission.

*United States v. Bear*, 769 F.3d 1221, 1226 (10th Cir. 2014). Before imposing a special condition, the district court must make an individualized assessment of whether the condition is appropriate for this particular defendant. *United States v. Martinez-Torres*, 795 F.3d 1233, 1237 (10th Cir. 2015). This court is "not hypertechnical in requiring the [district] court to explain why it imposed a special condition of release—a statement of generalized reasons suffices." *United States v. Koch*, 978 F.3d 719, 725 (10th Cir. 2020). Importantly, "[a] sentencing court need not provide reasons for each specific special condition that it imposes." *United States v. Francis*, 891 F.3d 888, 899 (10th Cir. 2018) (quotation omitted). Nonetheless, "the explanation must be sufficient for this court to conduct a proper review." *Id.*

When a defendant timely objects to a special condition of supervision, this court reviews for abuse of discretion. *Mike*, 632 F.3d at 691. Under this standard, "we will not disturb the district court's ruling absent a showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *Bear*, 769 F.3d at 1226. Here, the government does not contend Kornacki waived or forfeited the arguments he raises on appeal.[9]

_____

[9] For clarity, it is worth noting the government does argue Kornacki failed to preserve any argument the prior-authorization and monitoring-software special conditions invaded a fundamental right or liberty interest. *Cf. Koch*, 978 F.3d at 725

Accordingly, this court proceeds to review for abuse of discretion the district court's imposition of the prior-authorization and monitoring software special conditions.

**B. Application**

Kornacki raises on appeal a scattershot of objections to the district court's decision to impose the prior-authorization and monitoring-software special conditions as requirements of his supervised releases in the 2015 and 2019 cases. This court explains in turn why each such objection fails.

**Kornacki's first argument** asserts the district court erred when it found he "had not been compliant with the special conditions of *his most recent* supervised [release]." Appellant's Opening Br. at 15 (emphasis added). This argument is based on a significant misinterpretation of the transcript of the initial revocation hearing. Indeed, the district court made no such finding. Instead, the district court found as follows: "the fact is there hasn't been a significant compliance with the conditions of supervised release or the special conditions." This finding, which focuses on Kornacki's history and characteristics over the entire course of his many supervisions, is completely borne out by the record. At his first revocation hearing following the 2016 revocation petition, Kornacki admitted committing two violations

---

(noting that "when a court imposes a special condition that invades a fundamental right or liberty interest, the court must justify the condition with compelling circumstances"). Kornacki's reply brief makes clear, however, that he has not "argued in this appeal that the computer usage special conditions of his sentence invade a fundamental right or constitutional interest that require the government to show 'compelling circumstances' to justify the imposition of such conditions." Appellant's Reply Br. at 2.

of a special condition and one violation of a standard condition of his supervised release. At his second revocation hearing in 2019, he admitted committing three violations of special conditions of his supervised release. At his third revocation hearing in 2024, he admitted committing five violations of the standard conditions of his supervised release in the 2015 case and the same five violations of standard conditions in the 2019 case. The district court neither clearly erred nor abused its discretion in finding that over the lengthy course of his supervision, Kornacki has not significantly complied with the conditions, specifically including special conditions, of his supervised release.

**Kornacki's second argument** contends the prior-authorization and monitoring-software special conditions involve a greater deprivation of liberty than reasonably necessary. *See* 18 U.S.C. § 3583(d)(2). Section 3583(d)(2) requires that a special condition not involve a greater deprivation of liberty than reasonably necessary to achieve the purpose of deterring criminal activity, protecting the public, and promoting the defendant's rehabilitation. The record demonstrates the district court imposed the challenged conditions to achieve these goals.

Despite Kornacki's protestations to the contrary, both computer-related special conditions are consistent with this court's decision in *Blair*, 933 F.3d at 1274-81. *Blair* identified how special conditions concerning internet access and computer monitoring should be formulated to "allow[] the probation office to impose appropriate restrictions on [a defendant's] use of computers and the Internet sufficient to prevent him from engaging in improper behavior without involving a

16

greater deprivation of his liberty than is reasonably necessary to achieve the goals of [§] 3553(a)(2)(B)-(D)." 933 F.3d at 1281. A comparison of the prior-authorization and monitoring-software special conditions, *see supra* nn.1-2, with the analysis in *Blair*, 933 F.3d at 1280-81, demonstrates the district court carefully followed *Blair*'s guidance. By doing so, the district court made sure the prior-authorization condition did not implicate Kornacki's First Amendment rights. Thus, Kornacki is simply wrong to argue the prior-authorization and monitoring software special conditions are overly broad and, therefore, likely to unreasonably chill his use of a computer and the internet during his terms of supervision. *See id.*[10]

The challenged special conditions find full support in the record. The district court recognized Kornacki "has a history of refusing to follow the rules" and "[t]he present violations which [] Kornacki has admitted reflect[] his disregard for even the most basic conditions of supervision." Further, as set out above, the evidence reveals Kornacki repeatedly engaged in past criminality—SORNA violations and escape from an RRC—during his supervision. Considering this history, the district court found the recommended special conditions involved "only such deprivations of liberty or property as are reasonably necessary to accomplish the goals of sentencing." The district court focused on conditions that would protect the public—

---

[10] And, in any event, it is impossible to square this argument with the arguments Kornacki made in the district court and with his insistence in his reply brief that he is not arguing on appeal that the challenged special conditions implicate a fundamental right or constitutional interest. *See supra* n.9.

17

in particular, vulnerable young females like Kornacki's victim—and provide accountability given Kornacki's history of refusing to follow the rules. Indeed, Kornacki's probation officer specifically testified that the absence of relevant special conditions following the 2019 revocation hindered the probation office's ability to effectively supervise Kornacki. The district court did not abuse its discretion in concluding the prior-authorization and monitoring-software special conditions impose upon Kornacki no greater deprivation of liberty than necessary to deter further criminality on Kornacki's part, protect the public, and facilitate Kornacki's rehabilitation.

Kornacki's third argument maintains the district court did not comply with § 3583(d)(1), i.e., the requirement special conditions be reasonably related to the factors set forth in § 3553(a)(1), (a)(2)(B)-(D). In particular, he professes that the challenged special conditions are not linked to the nature and circumstances of his offense (failure to register and escape), and the district court did not explicitly find the prior-authorization and monitoring-software special conditions necessary to protect the public or necessary to his rehabilitation. This assertion is unconvincing. Foremost, the district court was not required to explain how the computer-related special conditions satisfied the specific factors upon which Kornacki focuses. Although a district court should consider each applicable § 3553(a) factor, a special condition need not be reasonably related to all factors. *United States v. Englehart*, 22 F.4th 1197, 1214 (10th Cir. 2022). Instead, the district court was only required to "provide at least generalized reasons for imposing special conditions of supervised

release." *Martinez-Torres*, 795 F.3d at 1236 (quotation omitted). This court is "not hypertechnical in requiring the [district] court to explain why it imposed a special condition of release." *Id.* at 1238.

The computer-related special factors are reasonably related to each of the relevant § 3553(a) factors: Kornacki's history and characteristics, the deterrence of further criminal conduct, protecting the public from further criminality, and rehabilitating Kornacki. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D); *cf. Englehart*, 22 F.4th at 1214 ("Although the district court should have considered each § 3553(a) factor, a special condition need not be reasonably related to all of the factors."). Kornacki is simply wrong in asserting the computer-related conditions are improper because they are not strictly related to his crimes of conviction. This court has made clear it is appropriate for a district court to look through, inter alia, a SORNA conviction to the underlying crime in imposing special conditions. *See Bear*, 769 F.3d at 1226-27 (collecting cases); *United States v. Hahn*, 551 F.3d 977, 979, 984 (10th Cir. 2008); *see also United States v. King*, 431 F. App'x 630, 635 (10th Cir. 2011) (unpublished disposition cited solely for its persuasive value). Here, the crime underlying the 2015 SORNA failure-to-register case is sexual battery on a fifteen-year-old girl. Following that conviction, Kornacki has consistently failed to register, as required by SORNA, and failed to complete required sex-offender treatment. Likewise, Kornacki's escape conviction in the 2019 case was associated with a violation-of-the-conditions-of-supervision in the 2015 case for failing to comply with the rules and restrictions specified by the sex-offender treatment agency.

Indeed, when Kornacki abandoned the RRC, leading to his conviction in the 2019 case, he did so while he was supposed to be attending sex-offender treatment. Moreover, the district court specifically observed this was the third time it revoked Kornacki's supervised release in his 2015 case. During his multiple failed terms of supervision, Kornacki had "a history of refusing to follow the rules." And "[t]he present violations which [] Kornacki has admitted reflect[] his disregard for even the most basic conditions of supervision." The district court also observed that during the time Kornacki was on supervised release, "there [was] no indication that he ha[d] ever paid attention to it at all and ha[d] refused to cooperate or to accommodate his own standards with those that [were] imposed by the sentencing supervised release provisions." The district court thus provided "at least generalized reasons for imposing [the computer-related] special conditions of supervised release." *Martinez-Torres*, 795 F.3d at 1236 (quotation omitted). That is, although not in a hypertechnical way, the district court adequately found that the challenged conditions would help protect the public, deter further criminality on the part of Kornacki, and further Kornacki's rehabilitation. *See Englehart*, 22 F.4th at 1214-15 (holding that even though the district court's explanation was thin, it was sufficient to allow this court to conclude the special condition imposed by the district court was related to at least one of the relevant § 3553(a) factors).

**Kornacki's fourth argument** is the district court failed to make the necessary individualized assessment before imposing the computer-related special conditions. He bases his argument on this court's decision in *Martinez-Torres*, 795 F.3d at 1238.

20

Kornacki's argument is without merit for two reasons: the record reflects the district court made the necessary assessment and the portion of *Martinez-Torres* upon which he relies is inapposite.

The district court made an individual assessment. It was only required to provide at least generalized reasons for the special conditions. *Englehart*, 22 F.4th at 1214; *see also United States v. Fawcett*, No. 24-4050, 2025 WL 1157200, at *3 (10th Cir. Apr. 21, 2025) (unpublished disposition cited solely for its persuasive value) ("To impose a special condition of supervised release, a sentencing court must make an individualized assessment. This individualized-assessment requirement is not onerous; a sentencing court need not provide reasons for each specific special condition that it imposes." (quotations, citation, and alteration omitted)). As set out above, the district court focused on Kornacki's consistent refusal to cooperate or comply with past conditions of supervised release, both standard and special. Furthermore, during the second hearing on the 2023 revocation, the district court went through each proposed special condition, eliminating some and altering others based on Kornacki's specific circumstances. The district court concluded Kornacki's history and characteristics required the computer-related special conditions. Kornacki is simply in error in asserting the district court did not tailor all special conditions, including the prior-authorization and monitoring-software conditions, to his individual circumstances.

In arguing to the contrary, Kornacki misreads this court's decision in *Martinez-Torres*. In the portion of *Martinez-Torres* relied upon by Kornacki, this

court was considering a district-court-imposed special condition which operated as a complete prohibition on the possession of legal adult pornography and other legal materials depicting or describing sexually explicit conduct. 795 F.3d at 1235-37. *Martinez-Torres* held that when special conditions of supervised release "implicate[] constitutional interests, such as the right to possess sexually explicit materials involving adults, more detail may be required if the reasons for the restriction are not matters of common knowledge." *Id.* at 1238 (citation omitted). As set out above, the computer-related special conditions at issue here do not implicate constitutional interests. Thus, the heightened explanatory requirement set out in *Martinez-Torres* is simply not implicated in this case.

**Kornacki's fifth argument** is that Special Condition No. 2, an unchallenged condition which requires him to submit his electronic devices to a warrantless search by an officer with reasonable suspicion, makes the prior-authorization and monitoring-software special conditions unnecessary. As detailed above, Kornacki's record of compliance with the conditions of his supervised release is nonexistent. And, importantly, the record shows that the district court's decision to decline to impose special conditions of supervision in 2019 made the probation officer's efforts to supervise Kornacki more difficult. Thus, the point of the challenged special conditions is not only to allow the district court and the probation officer to keep a closer eye on Kornacki, but also to deter him from committing future violations. *See United States v. Stan*, No. 23-1174, 2024 WL 4381134, at *4 (10th Cir. Oct. 3, 2024) (unpublished disposition cited solely for its persuasive value) (specifically rejecting

the argument the potentially overlapping special conditions were unreasonable in a case that involved repeated past violations of the conditions of supervision). "[T]he circumstances surrounding [Kornacki's] supervised release violations provided the district court a 'rational basis' to impose the special condition. No abuse of discretion occurred." *Id.* at *3 (citation omitted).

**Finally, Kornacki argues** the district court erred in imposing the computer-related special conditions because, in his view, "this is not, by any measure, an extreme case." This argument invites this court to reweigh the considerations that supported the district court's ruling. Review of the imposition of the special conditions is for an abuse of discretion. *Mike*, 632 F.3d at 692. "[W]hat [Kornacki's] arguments really amount to is a request to look at [§ 3583(d)'s] requirement with fresh eyes, while weighing all considerations in his favor to reimpose the special conditions" in 2019. *Stan*, 2024 WL 4381134, at *4. He does so after failing to comply with the standard conditions imposed in 2019 and an extensive history of noncompliance with all conditions over the course of his supervision. *See id.* Under the applicable abuse-of-discretion standard, this court cannot second-guess the district court's reasoned and reasonable conclusion that Kornacki's history of noncompliance is extraordinary. *See id.* at *3.

## IV. CONCLUSION

For those reasons set out above, the judgments of the district court are hereby

**AFFIRMED**.

Entered for the Court

Michael R. Murphy
Circuit Judge